## IOWA v. ILLINOIS.

ORIGINAL.

No. 5. Original. Submitted November 28, 1892. — Decided January 3, 1893.

The true line, in a navigable river between States of the Union which separates the jurisdiction of one from the other, is the middle of the main channel of the river.

In such case the jurisdiction of each State extends to the thread of the stream, that is, to the " mid-channel," and, if there be several channels, to the middle of the principal one, or, rather, the one usually followed.

The boundary line between the State of Iowa and the State of Illinois is the middle of the main navigable channel of the Mississippi River.

As the two States both desire that this boundary line be established at the places where the several bridges mentioned in the pleadings cross the Mississippi River, it is ordered that a commission be appointed to ascertain and designate at said places the boundary line between the two States, and that such commission be required to make the proper examination, and to delineate on maps prepared for that purpose, the true line as determined by this court, and report the same to the court for its further action.

THE case is stated in the opinion.

*Mr. John Y. Stone,* Attorney General of the State of Iowa, and *Mr. James C. Davis* for complainant.

*Mr. George Hunt,* Attorney General of the State of Illinois, for respondent.

MR. JUSTICE FIELD delivered the opinion of the court.

The Mississippi River flows between the States of Iowa and Illinois. It is a navigable stream and constitutes the boundary between the two States; and the controversy between them is as to the position of the line between its banks or shores which separates the jurisdiction of the two States for the purposes of taxation and other purposes of government.

The complainant, the State of Iowa, contends that, for taxation, and for all other purposes, the boundary line is the middle of the main body of the river, taking the middle line between its banks or shores without regard to the "steamboat channel," as it is termed, or deepest part of the stream, and that, to determine the banks or shores, the measurements must be taken when the water is in its natural or ordinary stage, neither swollen by floods nor shrunk by droughts.

On the other hand, the defendant, the State of Illinois, claims that, for taxation and all other purposes, its jurisdiction extends to the middle of "the steamboat channel" of the river, wherever that may be, whether on its east or west bank — the channel upon which commerce on the river by steamboats or other vessels is usually conducted, and which for that reason is sometimes designated as "the channel of commerce."

The State of Iowa in its bill alleges: That prior to and at the time of the treaty between England, France and Spain, in 1763, 3 Jenkinson's Treaties, 177, the territory now comprising the State of Iowa was under the dominion of France, and the territory now comprising the State of Illinois was under the dominion of Great Britain, and that, by the treaty named, the middle of the river Mississippi was made the boundary line between the British and French possessions in North America.

That by the treaty of Paris between Great Britain and the United States, which was concluded September 3, 1783, 3 Jenkinson's Treaties, 410, Art. II, and 8 Stat. 80, the territory comprising the State of Illinois passed to the United States;

and that by the purchase of Louisiana from France, under the treaty of April 30, 1803, 8 Stat. 200, the territory comprising the State of Iowa passed to the United States.

That the boundary between the territory comprising the States of Illinois and Iowa remained the middle of the river Mississippi, as fixed by the treaty of 1763.

That by the act of Congress of April 18, 1818, known as the act enabling the people of Illinois to form a State constitution, (3 Stat. 428, c. 67,) the northern and western boundaries of Illinois were defined as follows: Starting in the middle of Lake Michigan, at north latitude forty-two degrees and thirty minutes, "thence west to the middle of the Mississippi River, and thence down along the middle of that river to its confluence with the Ohio River," and that the constitutions of Illinois of 1818, 1848 and 1870 defined the boundaries in the same way.

And the bill further alleges that the State of Illinois and its several municipalities bordering on the Mississippi River claim the right to assess and do assess and tax, as in Illinois, all bridges and other structures in the river from the Illinois shore to the middle of the steamboat channel, or channel of the river usually traversed by steam and other crafts in carrying the commerce of the river, whether such channel is east or west of the middle of the main body or arm of the river; and that they thus assess and tax, as in that State, the bridge of the Keokuk and Hamilton Bridge Company across the river from Keokuk, Iowa, to Island No. Four, in Hancock County, Illinois, from the west shore of the island westward 2462 feet to the east end of the draw of the bridge, and to a point not over 580 feet east from the Iowa shore of the river and 941 feet west of the middle of the main arm or body of the river at that point.

That the steamboat channel, or channel of the river where boats ordinarily run in carrying the commerce of the river, varies from side to side of the river, sometimes being next to the Illinois shore and then next to the Iowa shore, and, at most points in the river, shifting from place to place as the sands of its bed are changed by the current of the water; that at the point of the Keokuk and Hamilton bridge mentioned

the river bed is rock and not subject to much change; that at that point, were it not for the bridge, the middle of the steamboat channel would be, and was before the bridge was erected, fully 300 feet east of the east end of the draw in the bridge, or 880 feet from the Iowa shore of the river and 2162 feet from the shore of the river in Illinois on Island No. Four; that at places in the river there are two or more channels equally accessible and useful for navigation by steamboats and other crafts carrying the commerce of the river; and that at the Keokuk and Hamilton bridge the channel used by steamboats is partly artificial, constructed by excavation of rock from the river bed to facilitate the approach to the lock of the United States canal immediately north of the bridge.

That the State of Iowa claims the right to tax all bridges across the river to the middle thereof, and does tax the Keokuk and Hamilton bridge to its middle between the east and west abutments thereof, that is, the west approach and abutment 200 feet and 1096 feet of the bridge proper, thereby treating, for convenience of taxation, the middle of the bridge between abutments as the middle of the river at that point, but which is in fact 225 feet less than one-half the distance across the main arm or body of the river at that point.

That the State of Illinois and its municipalities assess, and tax, as in that State, 716 feet of the bridge actually assessed and taxed in Iowa, and 225 feet of the bridge in addition thereto, located in Iowa but not taxed in that State.

That the Keokuk and Hamilton Bridge Company, owner of the Keokuk and Hamilton bridge, is a corporation of both of said States consolidated, and complains of such double taxation.

That litigation is now pending over such taxation, and is liable at any time to arise over the taxation of any of the other bridges across the river between the said States, now nine in number.

To the end, therefore, that the line between the States may be definitely fixed by the only court having jurisdiction to do so, the complainant prays that this court will take jurisdiction of this bill, and that the State of Illinois be summoned and

requested to answer it, waiving such answer being on oath, and that upon the final hearing this court will definitely settle the boundary between the States at the said several bridges.

To this bill the State of Illinois appeared by its attorney general and filed its answer, which denied that the boundary line between the States of Iowa and Illinois is the middle of the Mississippi River, and insisted that it is the middle of the steamboat channel, or channel commonly used by boats in carrying the commerce of the river, whether east or west of the middle of the river. It admitted that the State and its municipalities claimed the right to tax and did tax bridges and other structures in the river to the middle of the steamboat channel or channel of commerce, whether such channel was east or west of the middle of the main body or arm of the river, and did assess and tax the Keokuk and Hamilton bridge to its draw and west of the middle of the main body or arm of the river; and that the steamboat channel or channel of commerce is first near one shore and then near the other, and at other places nearly across the river. But it denied the right of the State of Iowa to tax the bridges mentioned crossing the Mississippi River to any point east of the middle of the steamboat channel, or channel of commerce of that river.

To the answer a replication was filed by the State of Iowa.

At the time of filing its answer the State of Illinois filed also its cross-bill, in which it alleges that there exist nine bridges across the Mississippi River between the States, the most southern of which is the Keokuk and Hamilton Railroad bridge and the most northern, the Dunlieth and Dubuque Bridge Company's railroad bridge.

That for the purposes of taxation the State of Illinois and its municipalities claim the right to assess and tax the respective bridges to the middle of the channel of commerce or steamboat channel, that is, the channel usually used by steamboats and other crafts navigating the river; and that on the part of the State of Iowa and its municipalities it is claimed that each State has the right to assess and tax to the middle of the main arm or body of the river, regardless of where the channel of commerce or steamboat channel may be.

That the Supreme Court of Iowa, in the case of *The Dunlieth and Dubuque Bridge Company* v. *The County of Dubuque*, (55 Iowa, 558,) held that the authorities in Iowa have the right to tax such structures to the middle of the main arm or body of the stream and no further, though at the point where such structure is situated the channel or part of the river followed by steamboat men in navigating the river is far east of the middle of such main body of the stream.

That following the decision in that case, the authorities in Iowa assess and tax such structures to the middle of the main body of the river.

That at the point of the location of the Keokuk and Hamilton bridge the main body of the river, before the construction of the bridge, was between the Iowa shore at Keokuk, Lee County, Iowa, and the west shore of Island No. Four, located in the city of Hamilton, Hancock County, Illinois, a breadth of about 3042 feet; that in constructing the bridge a solid approach is extended from the shore at Keokuk into the river 200 feet, and from the shore on Island No. Four, in Illinois, about 700 feet, and the main body of the river confined between the abutments to the bridge 2192 feet apart, and the bridge consists of the east and west abutments, eleven piers, a draw next to the west or Iowa abutment of 380 feet, and ten spans, together 1812 feet.

That the middle of the steamboat channel, or that part of the river usually traversed by steamboat men in navigating the river, is at or near the east end of the draw or pivot span, about 380 feet from the west abutment and 1812 feet from the east abutment.

That the assessor in Illinois in assessing the bridge values the bridge to the east end of the draw and assesses the same against that part of the bridge in Illinois, and the authorities in Iowa value and assess the bridge to the middle thereof, 1096 feet east from the west abutment, as in the State of Iowa; that thereby 716 feet of the bridge are valued and assessed both in Illinois and Iowa; that litigation is now pending in the lower courts between the bridge company and the authorities over the assessments, and that the same

trouble and complications are liable to arise over the assessment of any other of the bridges.

To the end, therefore, that the boundary line between the States of Illinois and Iowa at said several bridges may be defined and settled, the State of Illinois prays that the State of Iowa be made defendant to this cross-bill, and required to answer it, and that upon the final hearing the court will define and establish at each of the bridges the boundary lines between the States of Illinois and Iowa, to which points the respective States may tax. To this cross-bill the defendant, the State of Iowa, answered, admitting the existence of nine bridges across the Mississippi River, where it forms the boundary between the States of Illinois and Iowa, and that the State of Illinois and its several municipalities bordering upon the river claim the right to tax said bridges from the Illinois shore of the river to the middle of the channel of commerce or steamboat channel, and that the State of Iowa and its municipalities bordering on the river claim the right to tax and do tax the several bridges to the middle of the main arm or body of the river, regardless of where the channel of commerce or steamboat channel, that is, that part of the river usually traversed by steam or other vessels carrying the commerce of the river, may be. It therefore prays that upon the final hearing the boundary lines between the two States may be established, to which the respective States may tax.

By setting down the case for hearing on the bill, answer and replication, (without taking any testimony,) and on the cross-bill and the answer to it, all the facts alleged in the answer to the original bill, as were as those alleged in the cross-bill and not denied in the answer, are thereby admitted.

When a navigable river constitutes the boundary between two independent States, the line defining the point at which the jurisdiction of the two separates is well established to be the middle of the main channel of the stream. The interest of each State in the navigation of the river admits of no other line. The preservation by each of its equal right in the navigation of the stream is the subject of paramount interest. It

is, therefore, laid down in all the recognized treatises on international law of modern times that the middle of the channel of the stream marks the true boundary between the adjoining States up to which each State will on its side exercise jurisdiction. In international law, therefore, and by the usage of European nations, the term "middle of the stream," as applied to a navigable river, is the same as the middle of the channel of such stream, and in that sense the terms are used in the treaty of peace between Great Britain, France and Spain, concluded at Paris in 1763. By the language, "a line drawn along the middle of the river Mississippi from its source to the river Iberville," as there used, is meant along the middle of the channel of the river Mississippi. Thus Wheaton, in his Elements of International Law, (8th ed. § 192,) says:

"Where a navigable river forms the boundary of conterminous States, the middle of the channel, or *Thalweg*, is generally taken as the line of separation between the two States, the presumption of law being that the right of navigation is common to both; but this presumption may be destroyed by actual proof of prior occupancy and long undisturbed possession, giving to one of the riparian proprietors the exclusive title to the entire river."

And in § 202, whilst thus stating the rule as to the boundary line of the Mississippi River being the middle of the channel, he states that the channel is remarkably winding, " crossing and recrossing perpetually from one side to the other of the general bed of the river."

Mr. Creasy, in his First Platform on International Law, § 231, p. 222, expresses the same doctrine. He says:

"It has been stated that, where a navigable river separates neighboring States, the *Thalweg*, or middle of the navigable channel, forms the line of separation. Formerly a line drawn along the middle of the water, the *medium filum aquæ*, was regarded as the boundary line; and still will be regarded *prima facie* as the boundary line, except as to those parts of the river as to which it can be proved that the vessels which navigate those parts keep their course habitually along some

channel different from the *medium filum.* When this is the case, the middle of the channel of traffic is now considered to be the line of demarcation."

Mr. Creasy also refers to the language of Dr. Twiss on the same subject, who observes that "Grotius and Vattel speak of *the middle of the river* as the line of demarcation between two jurisdictions, but modern publicists and statesmen prefer the more accurate and more equitable boundary of the navigable Midchannel. If there be more than one channel of a river, the deepest channel is the Midchannel for the purposes of territorial demarcation; and the boundary line will be the line drawn along the surface of the stream corresponding to the line of deepest depression in its bed. . . . The islands on either side of the Midchannel are regarded as appendages to either bank; and if they have once been taken possession of by the nation to whose bank they are appendant, a change in the Midchannel of the river will not operate to deprive that nation of its possession, although the water-frontier line will follow the change of the Midchannel."

Halleck in his Treatise on International Law, c. 6, § 23, is to the same effect. He says: "Where the river not only separates the conterminous States, but also their territorial jurisdictions, the *thalweg*, or middle channel, forms the line of separation through the bays and estuaries through which the waters of the river flow into the sea. As a general rule, this line runs through the middle of the deepest channel, although it may divide the river and its estuaries into two very unequal parts. But the deeper channel may be less suited, or totally unfit for the purposes of navigation, in which case the dividing line would be in the middle of the one which is best suited and ordinarily used for that object."

Woolsey in his International Law, § 58, repeats the same doctrine and says: "Where a navigable river forms the boundary between two States, both are presumed to have free use of it, and the dividing line will run in the middle of the channel, unless the contrary is shown by long occupancy or agreement of the parties. If a river changes its bed, the line through the old channel continues, but the equitable right to the free

use of the stream seems to belong, as before, to the State whose territory the river has forsaken."

The middle of the channel of a navigable river between independent States is taken as the true boundary line from the obvious reason that the right of navigation is presumed to be common to both in the absence of a special convention between the neighboring States, or long use of a different line equivalent to such a convention.

Phillimore, in his Commentaries on International Law, in the chapter upon acquisitions, (c. xii,) speaks of decisions upon the law of property as incident to neighborhood proceeding upon the principle that "midchannel" is the line of demarcation between the neighbors. (Vol. 1, 239.)

The reason and necessity of the rule of international law as to the midchannel being the true boundary line of a navigable river separating independent States may not be as cogent in this country, where neighboring States are under the same general government, as in Europe, yet the same rule will be held to obtain unless changed by statute or usage of so great a length of time as to have acquired the force of law.

As we have stated, in international law and by the usage of European nations, the terms "middle of the stream" and "midchannel" of a navigable river are synonymous and interchangeably used. The enabling act of April 18, 1818, (3 Stat. 428, c. 67,) under which Illinois adopted a constitution and became a State and was admitted into the Union, made *the middle of the Mississippi River* the western boundary of the State. The enabling act of March 6, 1820, (3 Stat. c. 22, § 2, p. 545,) under which Missouri became a State and was admitted into the Union, made the middle of *the main channel of the Mississippi River* the eastern boundary, so far as its boundary was conterminous with the western boundary of Illinois. The enabling act of August 6, 1846, (9 Stat. 56, c. 89,) under which Wisconsin adopted a constitution and became a State and was admitted into the Union, gives the western boundary of that State, after reaching the river St. Croix, as follows : "Thence down the main channel of said river to the Mississippi, thence down the centre of the main

channel of that" (Mississippi) "river to the northwest corner of the State of Illinois.". The northwest corner of the State of Illinois must therefore be in the middle of the main channel of the river which forms a portion of its western boundary. It is very evident that these terms, "middle of the Mississippi River," and "middle of the main channel of the Mississippi River," and "the centre of the main channel of that river," as thus used, are synonymous. It is not at all likely that the Congress of the United States intended that those terms, as applied to the Mississippi River separating Illinois and Iowa, should have a different meaning when applied to the Mississippi River separating Illinois from Missouri or a different meaning when used as descriptive of a portion of the western boundary of Wisconsin. They were evidently used as signifying the same thing.

The question involved in this case has been elaborately considered, both by the Supreme Court of Iowa and the Supreme Court of Illinois, in cases relating to the assessment and taxation of bridges crossing the Mississippi River, as to the point to which the jurisdiction of each State for taxation extends, and they differed in their conclusions. In *Dunlieth and Dubuque Bridge Company* v. *County of Dubuque*, 55 Iowa, 558, 565, the Supreme Court of Iowa, after observing that the act of Congress admitting Iowa into the Union and the constitution of Iowa in its preamble declare that the eastern boundary of the State shall be "the middle of the main channel of Mississippi River," proceeds to inquire what line is understood by those words, "middle of the main channel." The defendant maintained that the deep water of the stream used in the navigation of the river was meant, while the plaintiff insisted that the words described the bed in which the stream of the river flows; that is, the bed over which the water flows from bank to bank. The court thought that the words, when applied to rivers generally, without the purpose of describing their currents or navigable characters, always bore the latter signification, observing that this was their primary meaning, and was of opinion that they were used in that sense in the act of Congress admitting the State into the

Union, and in the constitution of Iowa. In support of this view the court referred to the changing character of the currents of the river followed by vessels, caused by the shifting nature of the sand bars found in the river. "The course of navigation," it said, "which follows what boatmen call the channel, is extremely sinuous, and often changing, and is unknown except to experienced navigators. On the other hand, the bed of the main river, designated by the word channel, used in its primary sense, is the great body of water flowing down the stream; it is broad and well defined by islands or the main shore. It cannot be possible that Congress and the people of the State, in describing its boundary, used the word channel to describe the sinuous, obscure and changing line of navigation, rather than the broad and distinctly defined bed of the main river. The centre of this river bed channel may be readily determined, while the centre of the navigable channel often could not be known with certainty. The first is a fit boundary line of a State; the second cannot be."

In *Buttenuth* v. *St. Louis Bridge Co.*, 123 Illinois, 535, 548, the Supreme Court of Illinois reached a different conclusion after an elaborate consideration of the same question. That was a case where an alleged over-estimate was made of a bridge crossing the Mississippi River at St. Louis, and the question discussed was, how far did the jurisdiction of Illinois extend over the river? After observing that when a river is a boundary between States, as is the Mississippi between Illinois and Missouri, it is the main — the permanent — river which constitutes the boundary, and not that part which flows in seasons of high water and is dry at others, the court proceeds, treating the Mississippi River as a common boundary between the States of Illinois and Missouri, to inquire the meaning of the term, "middle of the Mississippi River," used in the enabling act of Congress and in the constitution, defining the boundaries of the State of Illinois. It answers the inquiry by observing that the word "channel" is used as indicating "the space within which ships can and usually do pass," and says: "It is apprehended it is in this sense the expressions 'middle

of the river,' 'middle of the main channel,' 'midchannel,' 'middle thread of the channel,' are used in enabling acts of Congress and in state constitutions establishing state boundaries. It is the free navigation of the river — when such river constitutes a common boundary, that part on which boats can and do pass, sometimes called 'nature's pathway' — that States demand shall be secured to them. When a river, navigable in fact, is taken or agreed upon as the boundary between two nations or States, the utility of the main channel, or, what is the same thing, the navigable part of the river, is too great to admit a supposition that either State intended to surrender to the State or nation occupying the opposite shore the whole of the principal channel or highway for vessels and thus debar its own vessels the right of passing to and fro for purposes of defence or commerce. That would be to surrender all, or at least the most valuable part, of such river boundary, for the purposes of commerce or other purposes deemed of great value, to independent States or nations."

The opinions in both of these cases are able and present, in the strongest terms, the different views as to the line of jurisdiction between neighboring States, separated by a navigable stream; but we are of opinion that the controlling consideration in this matter is that which preserves to each State equality in the right of navigation in the river. We therefore hold, in accordance with this view, that the true line in navigable rivers between the States of the Union which separates the jurisdiction of one from the other is the middle of the main channel of the river. Thus the jurisdiction of each State extends to the thread of the stream, that is, to the "midchannel," and, if there be several channels, to the middle of the principal one, or, rather, the one usually followed.

It is therefore ordered, adjudged and declared that the boundary line between the State of Iowa and the State of Illinois is the middle of the main navigable channel of the Mississippi River. And, as the counsel of the two States both desire that this boundary line be established at the places where the several bridges mentioned in the pleadings — nine in number — cross the Mississippi River, it is further ordered

that a commission be appointed to ascertain and designate at said places the boundary line between the two States, such commission, consisting of three competent persons, to be named by the court upon suggestion of counsel, and be required to make the proper examination and to delineate on maps prepared for that purpose the true line as determined by this court, and report the same to the court for its further action.