State v. Keane.

STATE OF MISSOURI, Respondent, v. CHARLES KEANE, Appellant.

Kansas City Court of Appeals, April 2, 1900.

1. **State Boundaries:** NAVIGABLE RIVERS: CHANNEL. Where a navigable river is the boundary between two states the exact line of that boundary is the center of a navigable channel as distinguished, from the center of the river from bank to bank.

2. ———: ———: CHANGE OF CHANNEL: AVULSION. If there is a gradual change in the channel of the river as it runs the center thereof will remain the boundary; but a sudden avulsion abandoning the old channel with a new course for the stream will leave the center of the old channel the boundary.

3. ———: ———: BED V. CHANNEL: STREAM. In legal literature relating to boundaries as marked by navigable rivers the words "bed" and "channel" are used interchangeably as meaning the same thing; and the term "middle of the stream" is the same as the middle of the channel of such stream.

4. ———: ———: OLD BED: EVIDENCE. Where there has been a change of the channel the boundary will remain in the center, from bank to bank, of the old river bed in the absence of evidence locating the old channel before the change.

State v. Keane.

5. **Criminal Law: SELLING LIQUOR: JURISDICTION: MISSOURI-KANSAS.** Where defendant's saloon was located west of the center of the old navigable channel of the Missouri river on the west boundary of Platte county, the circuit court of that county had no jurisdiction to try him for selling liquor without license since the act was committed in the state of Kansas.

Appeal from the Platte Circuit Court.—*Hon. A. D. Burnes,* Judge.

DEFENDANT DISCHARGED.

*Culver & Phillip, Ardy Gabbert* and *James Hull* for appellant.

(1) By act of congress, the western boundary of the state of Missouri was fixed at the middle of the channel of the Missouri river; and so the middle of the channel of the river as it ran continuously up to 1881 before the sudden change was the boundary line in 1881. Cooley v. Golden, 52 Mo. App. 229. And by statute the western boundary of Platte county was the "middle of the main channel of the Missouri river" as it then ran. R. S. 1879, sec. 5198; R. S. 1889, sec. 2984; R. S. 1879, sec. 5281; R. S. 1889, sec. 3067; Nebraska v. Iowa, 12 Supreme Ct. Rep. 396; Rees v. McDaniel, 115 Mo. 151; Cooley v. Golden, 52 Mo. App. 229; Buttenuth v. Bridge Co., 123 Ill. 535; Iowa v. Illinois, 147 U. S. 1; Nebraska v. Iowa, 143 U. S. 359; St. Louis v. Rutz, 138 U. S. 235. (2) It has been settled beyond controversy that the term "middle of the channel" when applied to navigable rivers forming the boundary between the various states (and the Missouri river is in fact and in law navigable—Benson v. Monrow, 61 Mo. 345), means the navigable channel—the steamboat channel. It does not mean the middle of the main body of the river,

taking the middle line between its banks, or shores, without regard to the "steamboat channel" as it is termed. Iowa v. Illinois, 147 U. S. 1; Buttenuth v. Bridge Co., 123 Ill. 535; Packet Co. v. Bridge Co., 31 Fed. Rep. 755, 757; Field's Outlines International Code [2 Ed.], sec. 30; Wheatons Elements Internat. Law [8 Ed.], sec. 192; Creasy's First Platform on International Law, p. 223; Halleck's Treatise on International Law, ch. 6, sec. 23; Wolsey's International Law, sec. 58; Bridge Co. v. Dubuque, 55 Iowa, 558.

*Sidney Beery* for respondent.

(1) The exact question presented by this record has been decided in the case of Cooley v. Golden, 52 Mo. App. 235, citing Nebraska v. Iowa, 143 U. S. 359; Missouri v. Kentucky, 11 Wall. 395; Buttenuth v. Bridge Co., 123 Ill. 535; Holbrook v. Moore, 4 Web. 437; Collins v. State, 3 Tex. App. 324; Gould in Waters, sec. 159. The principles announced in Cooley v. Golden, *supra,* were referred to in approving terms by this court in the later cases of State v. Metcalf, 65 Mo. App. 681, 686; Buttenuth v. Bridge Co., 123 Ill. 535, 545; Rees v. McDaniel, 115 Mo. 145, 152; Cooley v. Golden, 117 Mo. 33, 52; St. Louis v. Rutz, 138 U. S. 235; Nebraska v. Iowa, 143 U. S. 359; 8 Opinions of Attorney-General U. S. 175, 177. (2) The "middle of the main channel" of the Missouri river at this place is the western boundary of Platte county and of the state of Missouri, declared so by statute and by act of congress, regardless of whether the "middle of the main channel" means the middle of the changeable current of deep water, or the middle of the channel proper, that is, from bank to bank. The supreme court of the United States, the Attorney-General of the

United States, the Supreme Courts of Illinois, Iowa and Missouri, and this court, all agree that when, by reason of a sudden change, a river abandons its bed, and a part of it becomes dry the boundary between states bordering thereon is the center of such abandoned bed. Nebraska v. Iowa, 143 U. S. 359; St. Louis v. Rutz, 138 U. S. 235; 8 Opinions of Attorney-General U. S., 175, 177; Buttenuth v. Bridge Co., 123 Ill. 535; Bridge Co. v. Dubuque, 55 Iowa, 558; Rees v. McDaniel, 115 Mo. 145, 152; Cooley v. Golden, 52 Mo. App. 235.

ELLISON, J.—The defendant was indicted, tried and convicted on a charge of selling intoxicating liquor in Platte county, Missouri, without a license.

Platte county is on the western boundary of the state of Missouri, and the Missouri river, which is a navigable stream, is the boundary between the states of Missouri and Kansas. The sole question for decision is, in which state was defendant's saloon located when the sale was made? The case was submitted to the circuit court on an agreed statement of facts whereby it appeared that prior to the year 1881 the Missouri river, at the place in controversy, made a bend in the shape of a horseshoe with the toe pointing to the north and the heel to the south. In that year the high waters caused the river to suddenly change its course and cut directly across the heel of the shoe, instead of flowing around the bend as formerly. The old course of the river was abandoned by the stream and left a bed or tract of dry land. And it is in this old bed of the river defendant's saloon is located. The navigable channel at that point was next to the Missouri shore and the exact point of the location of the saloon is west of the middle of the old navigable channel, but is east of the middle of the old stream, measured from bank to bank. If the middle of the old river bed,

measured from bank to bank, is the boundary line between the two states, as contended by the prosecuting attorney, then the sale was made in Missouri and defendant was rightly convicted. But if the middle of the old navigable channel is the boundary line, then, the saloon being west of that, the sale was made in Kansas as claimed by defendant's counsel.

· The question involved here is one of great importance. Fortunately, it has in recent years received the attention of several of the highest tribunals in the country. As a result of that consideration, there is no longer any doubt that where a navigable river is the boundary between two states, the exact line of that boundary is the center of the navigable channel, as distinguished from the center of the river from bank to bank. One great consideration for this conclusion, as an original proposition, was that it could hardly be supposed that either-nation would surrender wholly to the other that portion of the stream which was its chief value to the state; that is, that portion which was capable of bearing upon its surface the commerce in which all civilized states are interested. While that consideration is not so forceful between states, like ours, under one general government, yet it is only less in degree and the original consideration existing as between independent nations is applicable with us.

If there is a gradual or imperceptible change in the course of such stream, the "river as it runs," that is, the channel of the river as it runs, will remain the boundary. But if there is a sudden avulsion, the river seeking a new course and leaving the old bed as dry land, as in this case, the new course of the stream will no longer mark the boundary; the boundary will remain as it was before the sudden change, that is, in the middle of the navigable channel as it existed just before the sudden shifting of the course. Iowa v. Illinois, 147 U. S. 1; Nebraska v. Iowa, 143 U. S. 359;

St. Louis v. Rutz, 138 U. S. 235; Rees v. McDaniel, 115 Mo. 145; Buttenuth v. Bridge Co., 123 Ill. 535; Railway v. Clinton, 88 Iowa, 188.

The state has called to our attention several authorities, some of them being among those just cited, in which it is sometimes stated in the course of the opinions and in the course of the discussion by text writers, that the boundary line will be "in the center of the old river bed." In most of these instances it will be found, from a consideration of the whole context, that clearly the words, "bed" and "channel," are used interchangeably as meaning the same thing. The bed of the channel being that portion of the river put to its chief use, is frequently written as the bed of the river. Thus, in Rees v. McDaniel, *supra*, the Supreme Court of Missouri, and in Buttenuth v. Bridge Co., *supra*, the Supreme Court of Illinois, distinctly state that the boundary remains in the middle of the old channel, yet the latter uses and the former quotes this expression: that, "if the river should suddenly change its course or desert the original channel the rule of law is, the boundary remains in the middle of the deserted river bed." So, in the case of Cooley v. Golden, 52 Mo. App. 229, decided by this court. It will appear from the opinion in its entirety that when the expression that the boundary line "remains in the middle of the deserted river bed" is used, it was not meant to assert the middle of the deserted bed between shores, but the deserted channel. In international law and by usage of European nations, the term "middle of the stream," as applied to a navigable river, is the same as the middle of the channel of such stream. "By the language, 'a line drawn along the middle of the river Mississippi from its source to the river Iberville,' as used in the treaty between Great Britain, France and Spain, 'is meant along the middle of the channel of the river Mississippi.'" Iowa v. Illinois, *supra*, and au-

thorities therein collected and commented on. In that case it is shown that Congress in fixing the boundary between states has used as meaning the same thing, the expressions, "Middle of the Mississippi river" and "Middle of the main channel of the Mississippi river." Iowa v. Illinois, *supra*; Buttenuth v. Bridge Co., *supra*.

But the expression that the boundary will remain in the center from bank to bank, of the old river bed is correct in all those cases where no showing has been made of where the navigable channel was. For, in the absence of proof on that subject it will be taken to be in the center of the bed located from bank to bank. Creasy's First Platform on International Law, sec. 231; Iowa v. Illinois, *supra*. But where the old channel is located, as in this case, the presumption which obtains in the absence of evidence gives way.

We have not found an authority on the general subject but that unites in the assertion that the center of the mainly navigated channel is the boundary. This channel, in point of fact, is as frequently on one side or the other of the middle of the stream, measured from bank to bank, as it is in the middle. Therefore to say that when the course of the stream suddenly changes the middle of the old bed from bank to bank becomes the boundary, is but saying that the change of the stream changes the boundary from the middle of the channel to the middle of the bed. There would be no reason in that and it is not what is decided in the cases. "The boundary remains as it was, in the center of the old channel, although no water may be flowing therein." Nebraska v. Iowa, 143 U. S. 361. "The result of the authorities puts it beyond doubt * * * that avulsion would establish a fixed boundary, to wit: the center of the abandoned channel." Ib. 367. "When the change is of a sudden and rapid character, such as occurs when a river

forms a new course by cutting through a bend, the boundary does not follow the change but remains in the middle of the old channel." Rees v. McDaniel, 115 Mo. 151.

Since the case affects the boundary between two states, we have, in the foregoing discussion, put our decision upon general principles of law, rather than base it on the terms of our statute which fixes the western boundary of Platte county at the "middle of the main channel of the Missouri river." R. S. 1889, sec. 2984.

Our conclusion is that defendant's saloon where the sale was made, being west of the center of the deserted channel, was in the state of Kansas and the circuit court had not jurisdiction. The judgment will be reversed and the defendant discharged. *Smith, P. J.,* concurs; *Gill, J.,* absent.