## HOGUE et ux. v. STRICKER LAND & TIMBER CO. *

### No. 7149.

Circuit Court of Appeals, Fifth Circuit.

Feb. 20, 1934.

SIBLEY, Circuit Judge, dissenting in part.

---

Chas. F. Engle, S. B. Laub, L. T. Kennedy, and W. A. Geisenberger, all of Natchez, Miss., and Allan Sholars and Geo. Gunby, both of Monroe, La., for appellants.

Ackland H. Jones, of Woodville, Miss., Hugh Tullis, of Vidalia, La., and Paul G. Borron, of Baton Rouge, La., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

W. B. Hogue, a citizen of Mississippi, brought suit in a court of that state against his wife and the Stricker Land & Timber Company, a Louisiana corporation, to remove a cloud upon the title to land bordering on the Mississippi river which he claimed to own and which he alleged is located in the state of Mississippi. The Stricker Company was not served with process, but it appeared pursuant to an order issued under section 57 of the Judicial Code (28 USCA § 118), procured an order of removal to the federal District Court for the Southern District of Mississippi, and after such removal filed a plea alleging lack of jurisdiction, either over its person because of its Louisiana citizenship, or over the subject-matter because, as it alleged, the land in controversy is located in Louisiana. Mrs. Hogue in her answer also asserted that the land is in Louisiana, but she filed a counterclaim against the Stricker Company and joined with her husband in his prayer to quiet title. The District Court held with the Stricker Company that the land is in Louisiana, and, without deciding the question of title, dismissed both the bill and the counterclaim, for want of jurisdiction over the subject-matter. Hogue and his wife appeal.

If, as the trial court held, the land is in Louisiana, the Mississippi state court had no jurisdiction over it; and the federal court acquired none by the removal proceedings. Lambert Run Coal Co. v. B. & O. R. Co., 258 U. S. 377, 42 S. Ct. 349, 66 L. Ed. 671; General Investment Co. v. Lake Shore & M. S. R. Co., 260 U. S. 261, 288, 43 S. Ct. 106, 67 L. Ed. 244. In which state, Louisiana or Mississippi, is the land in controversy situated is therefore the question, and the only question, presented by this appeal. That land lies north of the thirty-first degree of latitude, where the Mississippi river is the boundary between the two states. 3 Stat. 348. In 1817, when Mississippi was admitted into the Union, an island called Glasscock

*Order modified — F.(2d) —.

Island had already formed in the river, and the channel ran east of it; that is to say, between it and the Mississippi shore. In the course of time there came to be a channel on the west side of the island, but the eastern channel remained the main one until some time between 1873 and 1900, when the western became the main channel. As the main channel changed from the east to the west side of the island, the eastern channel gradually became narrower and shallower, until finally it has no water in it except during floods or extremely high stages of water. For a while the waters of the two channels joined at the southern tip of the island, but it was not shown that the channels themselves came together and flowed again as one channel. The eastern channel did not join the western channel in a change of course, but remained in its own separate bed which is yet easily traceable and appears on recent maps as the eastern chute. The western channel gradually worked its way by erosion still further west toward the Louisiana shore, and is now the only river channel. Glasscock Island ever since its formation has remained intact except as it has been enlarged by accretions and affected by the filling and drying up of the eastern channel. Land has been formed by accretions between the river and the eastern chute as well as between it and the island. The land in dispute all lies west of the eastern chute, with the river as its western boundary, and is claimed by Hogue as accretions to his riparian lands situated on the left bank in Mississippi.

■ Upon the admission of Mississippi in 1817, the middle thread or thalweg of the main channel of the river became the boundary line between that state and Louisiana. Louisiana v. Mississippi, 202 U. S. 1, 48, 26 S. Ct. 408, 50 L. Ed. 913; Iowa v. Illinois, 147 U. S. 1, 13 S. Ct. 239, 37 L. Ed. 55. As the only channel then in existence was the one east of Glasscock Island, that island was then in Louisiana, and still is, unless the boundary line moved with the main channel to the west of it. In Arkansas v. Tennessee, 246 U. S. 158, at page 173, 38 S. Ct. 301, 304, 62 L. Ed. 638, L. R. A. 1918D, 258, it is said: "It is settled beyond the possibility of dispute that where running streams are the boundaries between States, the same rule applies as between private proprietors, namely, that when the bed and channel are changed by the natural and gradual processes known as erosion and accretion, the boundary follows the varying course of the stream; while if the stream from any cause, natural or artificial, suddenly leaves its old bed and forms a new one, by the process known as an avulsion, the resulting change of channel works no change of boundary, which remains in the middle of the old channel, although no water may be flowing in it, and irrespective of subsequent changes in the new channel."

And again at page 175 of 246 U. S., 38 S. Ct. 301, 305: "An avulsion has this effect, whether it results in the drying up of the old channel or not. So long as that channel remains a running stream, the boundary marked by it is still subject to be changed by erosion and accretion; but when the water becomes stagnant, the effect of these processes is at an end; the boundary then becomes fixed in the middle of the channel as we have defined it, and the gradual filling up of the bed that ensues is not to be treated as an accretion to the shores but as an ultimate effect of the avulsion."

■ Glasscock Island did not disappear and reappear as the results of erosion and accretion. It remained unaffected by either. It is true also that strictly speaking there was no true avulsion, since the channel of the river did not suddenly leave its old bed and form a new one. The old channel remained where it was and the new one was formed gradually. But, where the main channel changes from one side of an island to the other, it seems that the same rules as to boundary govern as are applied in cases of avulsion, at least to the extent that the filling up of the old channel is considered as attributable, not to accretion, but to the change of conditions wrought by the new channel. In Missouri v. Kentucky, 11 Wall. 395, 401, 20 L. Ed. 116, the channel of the Mississippi river gradually changed from the west to the east side of Wolf Island. The difference between that case and this is one of degree only; there the accretion to the island was not very extensive, and it had not attached itself to the mainland, while here, except for the old bed of the eastern channel, there is batture land all the way between Glasscock Island and the Mississippi shore. In the cited case, before the change of channel, Wolf Island was on the Kentucky side. In holding that the boundary line was not changed, the Supreme Court said: "If the river has subsequently turned its course, and now runs east of the island, the status of the parties to this controversy is not altered by it, for the channel which the river abandoned remains, as before, the boundary between the States and

the island does not, in consequence of this action of the water, change its owner." In Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329, it was held that the boundary line remained as it was north of Green River Island, although the channel of the river had long since changed to south of that island. It therefore appears to be settled law that the old channel remains the boundary in the case of an island as well as in that of an avulsion.

In view of the foregoing Supreme Court decisions, it is clear, as it seems to us, that Glasscock Island remains in Louisiana, and that the batture land between it and the river on the west is an accretion to it and not to the riparian land on the Mississippi shore. A more difficult question arises as to the batture land to the south of it and between the eastern chute and the river. We are of opinion, however, that this land also is not an accretion to the riparian upland on the Mississippi shore, and consequently that Hogue cannot claim west of the eastern chute which originally formed the boundary line between the two states. The question would be different if the eastern channel had been swallowed up by the western, or the two had joined, moved westward together, and formed the present channel of the river. Then it might well be argued that the only channel which the river had below the island worked its way imperceptibly westward by erosion and left accretions behind which attached themselves to the Mississippi shore. But the eastern channel remained in its old bed where it took its last stand, and therefore could not have contributed to the accretions or become part of the present channel. The old channel either joins the new and participates in the slow processes of erosion and accretion, and thus destroys all traces of its abandoned bed, or remains in, maintains, and keeps to its old bed. A boundary line which remains in the old channel until its bed becomes empty of water does not then or thereafter jump overground from the bed of the old channel to the middle of the new channel of the river.

We conclude that, as the island separated and kept distinct the two channels of the river, the boundary remained as it was in the beginning.

The decree is affirmed.

SIBLEY, Circuit Judge.

I concur in the opinion except what is said at the end about the accreted land to the south of the island. So much of that land as is not south of the point where the thread of the two channels of the river intersected at the time the east channel ceased to be a channel belongs to the island. So much of it as is south of that point is accretion to the Mississippi shore and not to the island, and is in Mississippi. The case is, I think, as if say in 1900 by avulsion the river had changed its course. The state line east of the island then became fixed in the center of the old channel, the fixed portion beginning at the then intersection of the threads of the old and new channels to the north of the island and extending to their intersection south of the island. Between those two points Mississippi by the river's action lost her river boundary. Above and below them she retained it. The accretions to the east bank made by the river as it has since gradually moved westward belong to the island and to Louisiana between the two ends of the fixed boundary, but belong to Mississippi above and below the two ends of it. Otherwise the island by accretion might take from Mississippi her whole river front. While I think some of the accreted land to the south of the island is necessarily in Mississippi, the pleadings and the evidence fail to separate and identify it. The case dealing with the tract as a whole was not erroneously disposed of, but the dismissal ought to be without prejudice to a better suit touching such land as is in fact in Mississippi.