NAIL et al. v. AMERICAN NAT. BANK OF BRISTOW, OKL., et al. (UNITED STATES et al., Interveners).

No. 1100.

District Court, N. D. Oklahoma.
April 18, 1938.

For original opinion, see 21 F.Supp. 385.

T. L. Blakemore and E. C. McMichael, both of Sapulpa, Okl., and C. B. Rogers, of Tulsa, Okl., for Lucy Nail, Feney Rogers, and Senora Bruner.

Miller, Lytle & Wildman and Geo. H. Jennings, all of Sapulpa, Okl., for Edmond Burgess.

W. V. Pryor, of Sapulpa, Okl., for Alice May Bosen.

Wallace & Wallace and J. E. Thrift, all of Sapulpa, Okl., for American Nat. Bank of Bristow.

Chester A. Brewer, Asst. U. S. Dist. Atty., of Tulsa, Okl., and Joe Brown, of Muskogee, Okl., for the United States.

FRANKLIN E. KENNAMER and MURRAH, District Judges.

A decree was entered in this cause on December 17, 1937, denying the petition of the plaintiffs and the interveners, who sought the removal of the defendant American National Bank of Bristow, Okl., as trustee, and to require an accounting. See D.C., 21 F.Supp. 385. Since the entry of the decree, a petition for rehearing has been filed herein, challenging the jurisdic-

tion of the district court of Creek county of the subject matter of the litigation. It is contended that by virtue of the Act of January 27, 1933, 47 Stat. 777, that actions concerning funds involved in this case must be brought by the Attorney General of the United States, and in a United States court. It is asserted that the jurisdiction of the United States courts is exclusive, and, as the district court of Creek county was without jurisdiction when the suit was filed, this court acquired no jurisdiction thereof upon the removal of the case. It is also contended that the restrictions upon the funds involved in the trust were not removed, and that the Secretary of the Interior was merely transferring to a nongovernmental agency, to wit, the American National Bank of Bristow, Okl., the right to supervise and manage funds and property of the Indian ward. It is further urged that there was no congressional authority for the transfer of the governmental duties of supervision from the Secretary of the Interior to the American National Bank of Bristow, Okl.

 It should be noted that in the instant case the trust was executed by the Indian ward as creator, and the defendant American National Bank of Bristow, Okl., as trustee. The creator or settler of the trust was designated as the beneficiary thereunder, and contingent beneficiaries were created by the same instrument. This is not a trust executed by the Secretary of the Interior as one party thereto, with the trustee or the Indian ward as other parties. It is not a situation where the Secretary of the Interior has delegated duties imposed upon him by congressional acts to supervise the affairs of dependent Indian wards, but is a case of a relinquishment of control by the Secretary of the Interior over certain funds and assets of an Indian ward, to such ward, who has created a trust satisfactory to the Secretary of the Interior. No specific form of instrument is required for the removal of restrictions over funds. Appropriate rules have been designed providing for the method of removing restrictions on real property of Indian wards. It is urged by the government, in this case, that since two parcels of real estate, which had been purchased for the Indian, and a restricted form of deed accepted therefor, were freed from restrictions by appropriate action of the Secretary of the Interior, and were transferred to the defendant American National Bank of Bristow, Okl., as a part of the trust assets, at approximately the same time that the funds were transferred by the Secretary of the Interior to the trustee, that it clearly evidenced an intention upon the part of the Secretary of the Interior to remove restrictions only from the real estate, and not the funds. It seems clear that the intention of the Secretary of the Interior was to pass the property conveyed to the trustee free and clear of all restrictions. If the Secreteary had not intended to part with control over the funds involved in the trust, such funds would not have been paid over to the trustee. The action of the Secretary of the Interior clearly shows an intention to transfer the funds and properties, referred to in the trust agreement, to the Indian ward, to be placed in trust. If a particular form or procedure had existed for the removal of restrictions over funds, it is assumed that such action would have been taken by the Secretary of the Interior, because the prescribed procedure was followed with respect to the real estate conveyed to the trust, but, as no form was necessary for the removal of restrictions over funds, no formal action was taken. The funds were paid over. The Secretary of the Interior, therefore, parted with whatever control and supervision he had over the particular assets conveyed to the trust. There was no delegation of authority or supervision by the Secretary to the Trustee. There was a clear relinquishment of control by the Secretary of the Interior over such assets and a retention of the supervision provided in the trust agreement. The instrument of trust provided for the filing of reports with the Secretary of the Interior by the trustee, and gave the Secretary other supervisory powers. The Indian ward was capable of entering into any form of a trust agreement she deemed proper, and the Secretary of the Interior was justified in imposing whatever requirements he saw fit, before removing restrictions and relinquishing his control over the funds and properties transferred to the trustee. The trustee is not required to do the things formerly performed by the Secretary of the Interior in the exercise of his supervision over the funds of a dependent Indian ward; the trustee's duties are fixed by the trust instrument, and his action with respect to such funds and property, held in trust, must conform to the requirements of the trust agreement. There has been no showing that the provisions of the trust agreement are similar to the requirements of the Secretary of the

Interior with respect to the control and investment of the funds and property. There has been no delegation of authority by the Secretary of the Interior to the trustee, and could not have been, unless the Secretary of the Interior had undertaken to require of the trustee the performance of duties required of the Secretary by congressional acts and regulations promulgated thereunder, and, further, that the Secretary of the Interior had retained the right to retake such assets.

The case of United States v. Mott, 10 Cir., 37 F.2d 860, is relied upon in support of the contentions urged in the petition for rehearing. The questions involved in the cited case differ widely from those presented in the instant case. The cited case correctly announced that the Secretary of the Interior was without authority to turn over property to an Indian on terms. that took all of the property rights away from the dependent Indian. The government undertook the duty of controlling and preserving the property of dependent Indians. The purpose was to afford protection against spoilation. The Secretary did not perform the duties enjoined upon him in the cited case, but there is nothing in the record in this case which indicates that the Secretary has not acted prudently in the preservation of the property of the creator of the trust. This case does not involve facts by which the Secretary of the Interior removed restrictions and surrendered control over funds and property upon consent that the dependent Indian be deprived of such property. On the contrary, the trust agreement made specific provision for the defendent Indian receiving all of the benefits from the property during her lifetime. The cited case is therefore, not controlling.

While we do not deem the contentions urged in support of the petition for rehearing, outlined above, sound, still, if they were meritorious, the only question we can consider is want of jurisdiction. The petition for rehearing was filed after the expiration of the term of this court at which the decree was rendered. Equity Rule 69, 28 U.S.C.A., following section 723, prevents a consideration of any question except want of jurisdiction.

It is urged that the Act of January 27, 1933, 47 Stat. 777, conferred exclusive jurisdiction upon the federal courts in matters involving trusts or property of restricted Indians. It is further contended that the trust agreement was validated by the congressional act, and that by reason thereof the administration of the trust became subject to the act. Section 2 of the act is set out in the subjoined note.[1] It may be here observed that by its terms the Secretary of the Interior is authorized to permit the creation and establishment, out of restricted funds, of trusts for the benefit of such Indians, his heirs or other beneficiaries designated by him, with a further provision that all trust agreements or contracts made or entered into prior to the date of the approval of the act, and all agreements providing for or looking to the creation of such trusts, were declared null and void, unless such contracts or agreements had theretofore been approved by the Secretary of the Interior. The act recognizes the validity of trusts involving restricted funds prior to the approval of the act, if such trusts had theretofore been approved by the Secretary of the Interior. It did not validate such trusts, but by legislative expression recognized their validity. The act cannot be construed as validating trusts theretofore made, but clearly shows

---

[1] "Sec. 2. The Secretary of the Interior be, and he is hereby, authorized to permit, in his discretion and subject to his approval, any Indian of the Five Civilized Tribes, over the age of twenty-one years, having restricted funds or other property subject to the supervision of the Secretary of the Interior, to create and establish, out of the restricted funds or other property, trusts for the benefits of such Indian, his heirs, or other beneficiaries designated by him, such trusts to be created by contracts or agreements by and between the Indian and incorporated trust companies or such banks as may be authorized by law to act as fiduciaries or trustees: Provided, That no trust company or bank shall be trustee in any trust created under this Act which has paid or promised to pay to any person other than an officer or employee on the regular pay roll thereof any charge, fee, commission, or remuneration for any service or influence in securing or attempting to secure for it the trusteeship in any trust: Provided Further, That all trust agreements or contracts made or entered into prior to the date of approval of this Act, and all contracts or agreements made or entered into prior to said date providing for or looking to the creation of such trust or trusts shall be null and void unless such contracts or agreements shall have heretofore been approved by the Secretary of the Interior." 47 Stat. 777.

that it invalidated all trusts theretofore made involving restricted funds which had not been approved by the Secretary of the Interior. The act clearly shows that it recognizes and accepts as valid all trusts involving restricted funds of Indians which had been approved by the Secretary of the Interior prior to the approval of the act.

 It is urged that the Act of January 27, 1933, 47 Stat. 777, confers exclusive jurisdiction on federal courts as to all actions involving trust agreements, accountings thereunder, cancellations thereof and removal of trustees, where restricted funds of Indians are involved. Section 6 of the act is set out in subjoined note.[2] The act clearly provides for exclusive jurisdiction in federal courts for all trusts created under or by virtue of the congressional act, there is nothing in it which relates or pertains to trusts created prior to its approval, which had been approved by the Secretary of the Interior. It is to be noted that section 6 of the act makes provision for a remedy in cases where a trust was procured in violation of any of the provisions of the act, or where the trustee designated therein had failed to properly perform the duties imposed. It clearly deals with trusts created under or in contemplation of the particular congressional act, and makes no reference to trusts created prior to the approval of the act, which trusts had been approved by the Secretary of the Interior. It therefore follows that the trust involved in this case was not subject to the Act of January 27, 1933, 47 Stat. 777, but the validity of such trust was recognized therein.

It is urged that if the state court, in which this action was instituted, had no jurisdiction to hear and determine the case, that this court, upon removal of the case, acquired no larger or greater jurisdiction than was invested in the state courts. This is a sound principle of law (see General Investment Company v. Lake Shore &

Michigan Southern Railroad Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671; Lightfoot v. Atlantic Coast Line R. Co., D.C., 33 F.2d 765, and Hogue v. Stricker Land & Timber Co., 5 Cir., 69 F.2d 167), but it is not applicable here. If the trust involved in this action had been created by virtue of the Act of January 27, 1933, 47 Stat. 777, the principle would be controlling. Since the act does not control the trust involved in this suit, the district court of Creek county had jurisdiction in the case, and this court, therefore, acquired jurisdiction upon the removal of the case.

The petition for rehearing is denied and exceptions allowed.

---

[2] "Sec. 6. If, after the creation and approval of any trust, it is found that said trust was procured in violation of any of the provisions of this Act, or that the trustee designated therein has failed or refused to properly perform the duties imposed thereby, in accordance with the terms, provisions and requirements of said trust agreement, it shall be the duty of the Attorney General to institute appropriate proceedings in the Federal Courts for the cancellation and annulment of said trust by court decree, and upon decree of annulment and cancellation, which shall be at the cost of the trustee, and after accounting, but without the allowance of any fee, charge, or commission for any services rendered by the trustee, all funds held by the trustee shall be paid to the Secretary of the Interior as restricted funds, and the Federal courts are hereby given exclusive jurisdiction of all actions involving an accounting under any trust created under the provisions of this Act, and all actions to cancel, annul, or set aside any trust entered into pursuant to this Act." 47 Stat. 778.