SHARP et al. v. LEARNED.

(Division B. April 24, 1939. Suggestion of Error Overruled May 22, 1939.)

[188 So. 302. No. 33682.]

**Engle & Laub**, of Natchez, for appellant R. B. Sharp.

**Jones & Stockett** and **W. Roger Jones,** all of Woodville, for appellant R. Mason Stricker.

879

Brandon & Brandon, of Natchez and **Wells, Wells & Lipscomb**, of Jackson, for appellee.

Argued orally by **S. B. Laub**, and **A. H. Jones**, for appellants and by **Gerard Brandon**, for appellees.

**Anderson, J.,** delivered the opinion of the court.

This case is here on appellee's amended bill, demurrers thereto by appellants, a decree overruling the demurrers, and an appeal therefrom to settle the principles of the cause. This is the second appeal of this cause (181 So. 142, and on suggestion of error, 182 So. 122).

The original and amended bills are in all substantial respects the same except one. In the amended bill, the appellee sets out the facts relied on as constituting Dia-

mond Island Towhead, as a part of the territory of this state, instead of that of Louisiana. The amended bill in that respect alleges:

"That because of changes in the course of the navigable stream of the Mississippi River, said Diamond Island or Diamond Island Towhead is now situated to the Westerly side of the present navigable stream of the Mississippi River and is joined in part to the Louisiana shore, but despite said fact the same has ever been and is now within the territorial limits of the County of Warren and State of Mississippi; and, in support of the allegation of fact, Complainant charges and shows with reference to the formation of said Diamond Island, the following, to-wit:

"That at the time when the State of Louisiana was admitted to the Union as a State by Act of Congress, found at Chapter 50 of the United States Statutes at Large, Vol. 2, page 701, approved April 8th, 1812, the boundary of the State of Louisiana at this point (the same being South of the 33 degrees of North latitude and North of the River Iberville) was designated as being down the Mississippi River,—the thread or center of said River forming said boundary originally; and by Act of Congress of the United States of March 1st, 1817, 3 Stat. 348 entitled 'An Act to enable the people of the western part of Mississippi territory to form a constitution and state government, and for the admission of such state into the union, on an equal footing with the original states,'—pursuant to which the State of Mississippi was formed and admitted to the union as a state, the Western boundary of the territory to be included within said State North of the 31st degree of North latitude and South of the Southern boundary of the State of Tennessee was designated as being up the Mississippi River, and that the thread or center of said River formed said boundary originally.

"That the County of Warren, State of Mississippi, is on the Mississippi River, North of said 31 degrees of

North latitude and North of said River Iberville and South of said 33 degrees of North latitude and South of the Southern boundary of the State of Tennessee.

"That thereafter at the place where said Diamond Island is now located and opposite said Warren County, Mississippi, the land on the Mississippi River in the State of Louisiana gradually wore off by erosion and caved into the Mississippi River and disappeared, while at or near said point the shore or bank of the Mississippi River on the Mississippi side was gradually extended in a Westerly direction by accretions formed successively and imperceptibly to the soil of said shore until it extended westerly as a point of land projecting Westwardly to the place where said Diamond Island or Diamond Island Towhead is now located; that as the Mississippi shore or bank along the Mississippi River was thus extended in a westerly direction by alluvion formed by accretion, the thalweg or thread of the channel of the Mississippi River was likewise extended in a Westerly direction; that as the thread of said channel was thus extended westerly, the boundary line between the States of Louisiana and Mississippi was also extended westerly in like manner and in like distances, remaining at all times to the North, West, and South of the point or projection of land thus formed and attached to the Mississippi shore.

"That after the boundary line between the said States had been thus extended Westwardly so as to include within the territorial limits of the State of Mississippi the land which is presently known and designated as Diamond Island or Diamond Island Towhead, and which was formed as a point of land formed by accretion to the Mississippi shore and a part of the territorial limits of the State of Mississippi, the Mississippi River cut across said point of land, forming a new but minor channel across said point of land, thereby cutting off a portion thereof from the Mississippi mainland and forming an island which was thereafter known and designated as Diamond Island or Diamond Island Towhead; but yet in so doing

the Mississippi River yet flowed in a main channel around to the North, West, and South of said Diamond Island, leaving the same yet upon the Mississippi side of the then main channel of the Mississippi River; and said Island when so formed was, continued to be, and now is within and a part of the territorial limits of the County of Warren and State of Mississippi.

"That thereafter the new channel which was thus formed by the action of the Mississippi River in cutting across said point of land over a period of years gradually widened and deepened, and the old or original channel which lay to the North, West, and South of said Diamond Island or Diamond Island Towhead was gradually filled by accretion in most part formed to said Island and in small part formed to the Louisiana mainland, until finally the new channel thus formed as above alleged became the principal or main channel of the Mississippi River, and the old Channel gradually filled by accretion, until finally the said accretions formed to said Island in most part and that formed in small part to the Louisiana mainland met at certain places, and the water of the Mississippi River ceased to flow at low stages therein and between Diamond Island or Diamond Island Towhead Mississippi shore and the Louisiana mainland shore.

"That said Diamond Island or Diamond Island Towhead never washed away and at the time said new channel of the Mississippi River was formed by the action of that river in cutting across said point of land and forming an island the line between the States of Louisiana and Mississippi was in and remained in the center of the old channel which flowed to the North, West, and South of said point of land and of the land thus formed into an island designated as Diamond Island or Diamond Island Towhead, and which old channel was and is to the West of the new channel made by said action of the river in cutting across said point of land. That when the water thus ceased to flow through said old channel as above described and became stagnant, the boundary line be-

tween the States of Louisiana and Mississippi then became fixed in the middle of the old navigable channel and was not afterward affected or changed by the filling up of said old channel, and that said line is now the boundary line between said States of Louisiana and Mississippi at that place, and all the territory and land which forms said Diamond Island or Diamond Island Towhead and all accretion thereto, being all that lying to the South, East, and North of said old channel, was, remained, and is the land known and designated as Diamond Island or Diamond Island Towhead and in Warren County and State of Mississippi, and it is upon said lands so known as Diamond Island or Diamond Island Towhead, being said tract of land in Warren County, Mississippi, that, as above alleged your Complainant has recently cut, severed, and removed certain trees and timber, and such is the same land to which your Complainant claims title, as by him hereinafter asserted.''

We have reached the same conclusion the chancellor did —that under the allegations of the amended bill Diamond Island Towhead is Mississippi and not Louisiana territory. On the former appeal we held that under the allegations of the original bill it was a part of the State of Louisiana. We reached that conclusion upon applying the principle that the boundary line of a navigable river between two states is the thread of the stream and continues with gradual changes in the thread. There is an exception to that rule which is that where land on a navigable stream belongs to one state, and by gradual change in the thread of the stream, the main channel flows between it and the state to which it belongs, it continues to be the territory of that state, and not the territory of the state on the opposite side of the stream; the line between the states remains where it was before the land was cut off —it is the old thread, not the new thread of the stream. There seems to be little, if any, conflict in the auhorities supporting that proposition. Missouri v. Kentucky, 11 Wall. 395, 20 L. Ed. 116; Indiana v. Kentucky, 136 U.

S. 479, 10 S. Ct. 1051, 34 L. Ed. 329; Iowa v. Illinois, 147
U. S. 1, 13 S. Ct. 239, 37 L. Ed. 55; Washington v. Oregon,
211 U. S. 127, 29 S. Ct. 47, 53 L. Ed. 118, and on rehear-
ing 214 U. S. 205, 29 S. Ct. 631, 53 L. Ed. 969; Louisiana
v. Mississippi, 282 U. S. 458, 51 S. Ct. 197, 75 L. Ed. 459;
Randolph v. Hinck, 277 Ill. 11, 115 N. E. 182; Whiteside
v. Norton, 8 Cir., 205 F. 5, 123 C. C. A. 313, 45 L. R. A.
(N. S.), 112.

In Iowa v. Illinois, the Supreme Court quotes with ap-
proval the following [147 U. S. 1, 13 S. Ct. 242] : "Gro-
tius and Vattel speak of the middle of the river as the
line of demarkation between two jurisdictions, but that
modern publicists and statesmen prefer the more accurate
and more equitable boundary of the navigable mid-chan-
nel. If there be more than one channel of a river, the
deepest channel is regarded as the navigable mid-channel
for the purpose of territorial demarkation; and the
boundary line will be the line drawn along the surface
of the stream corresponding to the line of deepest de-
pression of its bed. The islands on either side of the
mid-channel are regarded as appendages to either bank;
and, if they have once been taken possession of by the
nation to whose bank they are appendant, a change in
the mid-channel of the river will not operate to deprive
the nation of its possession, although the water frontier
line will follow the change of the mid-channel."

Sutton v. Archer, 93 Miss. 603, 46 So. 705, relied on
by appellants is not in point. The islands there involved
were gradually washed away—they were destroyed. The
court held that accretions formed opposite on the Ar-
kansas side belonged to that state. The change in the
channel of the river from the Louisiana side to the Mis-
sissippi side of Diamond Island Towhead did not de-
stroy the island—it was left standing, and, under the
authorities referred to, the old channel of the river
between the island and the Louisiana side continued to be
the line between the states.

Appellants argue that, granting that the island is a

part of Mississippi territory, they had the right to resort to the courts of Louisiana for redress for the alleged trespass. We adhere to what was said on this question in the opinion on the former appeal of this case. Here we have the lands on which the alleged trespass was committed situated in this state, and all the parties to the cause residents of this state. In some respects the laws of Louisiana, with reference to the rights of riparian owners, are different from those of Mississippi. ''Where the foreign suit is brought for the purpose of evading the rightly applicable laws of the domicile of the parties,'' such suit will be enjoined. 14 R. C. L., sec. 116, page 415.

Appellee was not required to deraign and show a perfect title to the land on which the trees were cut. His allegation of title and right of possession were sufficient.

Affirmed and remanded.