## ARKANSAS *v.* TENNESSEE.

No. 2, Original. Argued October 5, 1925.—Decided November 16, 1925.

1. Commissioners appointed in this case to run, locate and designate part of the boundary between Arkansas and Tennessee along the middle of the main navigable channel of the Mississippi River as it was in 1876 immediately prior to changes wrought by avulsion, properly made a preliminary investigation and a provisional survey and location of the line in advance of hearing testimony on the subject. P. 154.

2. The objection that the line recommended by the commissioners was established by them without considering the evidence, *held* not justified. *Id.*

3. Absolute accuracy not being attainable, a degree of certainty that is reasonable as a practical matter, is all that is required in locating this boundary. The commissioners therefore did not err in accepting as a general guide, subject to corrections by other evidence available, a map made by a government engineer shortly before the avulsion, based on a reconnoissance by steamboat, conducted without accurate measurements or exact instrumental observations, for the purpose of ascertaining the general appearance of the river and gaining a general idea of the shape and location of the channel. P. 155.

4. Opinions of some witnesses that the line can not be located with reasonable certainty, *held* of little weight as against the facts proven and the determination of the commission. P. 157.

5. Costs and expenses apportioned equally between the two States; except the cost of unnecessary printing of testimony, which is placed upon the party which occasioned it. P. 158.

Exceptions overruled and final decree directed.

On defendant's exceptions to the report of the commissioners appointed to run, locate and designate part of the boundary between Arkansas and Tennessee. See 246 U. S. 158; 247 U. S. 461.

*Mr. Caruthers Ewing,* for the complainant.

*Mr. G. T. Fitzhugh,* for the defendant.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The commissioners, who were named by the decree entered June 10, 1918, (247 U. S. 461), and directed to run, locate and designate the boundary line between the States along the portion of the Mississippi River that was left dry as a result of the avulsion in 1876, filed their report, May 24, 1921. They correctly understood,—and counsel for the parties agreed with them,—that the directions contained in the decree applied to the two branches of the river as it formerly flowed,—the Devil's Elbow

around Centennial Island and Island 37, and also the old river bed between Brandywine Island and the Tennessee shore. They found and recommended a line indicated by courses and distances set out in, and shown on a map attached to, their report. The defendant filed numerous exceptions which need not be quoted at length. The substance of its contentions is sufficiently indicated below.

Defendant asserts that the commissioners established the boundary line before its witnesses were heard and before cross examination of any witness for the plaintiff. But the record does not support the contention. In July, 1918, the commissioners examined the territory involved. In October, 1919, they took a survey party to the place to commence work. In 1920, they completed their surveys, including the line, then only provisional, which later was recommended in their report. The making of these surveys in advance of hearing the testimony was an appropriate step in the investigation. While the field work was in progress, the commissioners spent most of the time in the field, assisting, and examining the topography and comparing the evidence. Facts disclosed by the survey and so gathered well might be deemed to be useful to enable the commissioners the better to understand and determine the value of other evidence. The report states that the commissioners spared no effort to secure maps and evidence indicating the course of the channel from the earliest record down to the time of the investigation. And that statement seems well supported. There is nothing to justify the suggestion that the commissioners established the line without considering the evidence.

Defendant insists that the middle of the main navigable channel as it existed before the avulsion could not be located with reasonable certainty and that the commissioners should have so reported (decree, par. 5). It maintains that the recommended boundary, except that

portion between Island 37 and Arkansas, is based entirely
on a reconnoissance made by Major Charles R. Suter,
Corps of Engineers, United States Army, in 1874, and
insists that the Suter line is not established by the evi-
dence.   Objection is also made to the location of the
channel on the east side of Island 39, and to certain other
parts of the commissioners' line.

The boundary line to be located is the middle of the
main channel of the river as it existed in 1783 subject to
subsequent changes occurring through natural and grad-
ual processes.   In 1823, the location of the river was
substantially as indicated on a map referred to in the
record as Humphrey's map, and there has been no map
or survey, which tied the channel to any fixed monument,
showing the location of the river as of any later date.
The evidence shows that such channels are liable to
change substantially from time to time.   And the parties
stipulated that from 1823 to 1876 the river and land lines
had been altered as shown in the opinion of the Supreme
Court of Tennessee in the case of *State v. Pulp Co.,* 119
Tenn. 47, 59.   The Humphrey map is on page 60 and the
Suter map on page 62 of the opinion.   The changes found
to have taken place in this period need not be specified.
There is nothing to indicate that the 1823 map is useful
as a guide to the boundary line as established by the inter-
locutory decree.   The reconnoissance of 1874 was made
pursuant to an Act of Congress approved June 23, 1874,
c. 457, 18 Stat. 237, 242, providing for surveys and esti-
mates for the improvement of certain transportation
routes to the seaboard.   Major Suter was assigned to
make examination of the Mississippi River from Cairo to
the Gulf.   His party had a government steamboat and,
in the performance of the work, passed over the part of
the river here involved four times.   The courses of the
channel were taken by compass.   Distances were deter-
mined by the speed of the boat.   Widths of the river were

estimated, and to some extent these estimates were checked by triangulation. The purpose was to ascertain the appearance of the river and to get a general idea of the shape and location of the channel. No survey by actual measurements was made, and accuracy was not attained. From the evidence and a stipulation of the parties, the commissioners found that there had been no material change in the river between the time of the reconnoissance in 1874 and the avulsion in 1876. While not made according to actual measurements, the Suter map may be said to present the general situation as it existed immediately before the avulsion. The commissioners did not follow the map at all places and did not take it as their sole guide for the ascertainment of any part of the line. On satisfactory evidence that was not contradicted, the commissioners found that Island 37 was on the Tennessee side of the main channel as it existed in 1876, and not on the Arkansas side, as shown by the Suter map. The commissioners also found that the United States township plats show that Island 39 at the foot of Brandywine was included in the public surveys of Arkansas, and that the old maps which were used as guides for the navigation of the river show that island very close to or against the Arkansas side. They report that they could not find any evidence to the contrary. And so they determined the main channel to have been on the easterly side of that island. As their conclusion is well sustained by the evidence it is immaterial whether, as stated in the report, Suter's map shows a line on each side of the island.

Counsel for the defendant asserts that, "A map, to be of any value for the purpose of locating any particular lines or objects thereon, must be based upon a survey accurately made by measurement and instrumental observations, and must be a faithful and correct delineation of a faithful survey, in every detail." And on that basis,

he argues that the Suter map is valueless as a means accurately to fix the old channel, because not properly tied to some point or monument. But the standard demanded is not applicable. The thing to be done must be regarded. It is to locate the boundary along that portion of the bed of the river that was left dry as a result of the avulsion, according to the middle of the main navigable channel at the time the current ceased to flow therein as a result of the avulsion. Absolute accuracy is not attainable. A degree of certainty that is reasonable as a practical matter, having regard to the circumstances, is all that is required. The line of the greatest depth of water is not necessarily the middle of the channel. *Minnesota* v. *Wisconsin*, 252 U. S. 273, 282. The location, limits and width of the main navigable channel were not precisely defined or permanent. The determination of its location involved more than mere measurements and required the exercise of judgment based on experience. The degree of accuracy insisted on is not reasonable or practicable.

Defendant's principal reliance is on opinions expressed by some of the witnesses to the effect that the line cannot be located with reasonable certainty. But such opinions are of little weight as against the facts shown and the determination of the commission. In addition to the commissioners' careful investigation in the field, there was the testimony of steamboat men and others who were familiar with the situation as it existed before the avulsion in 1876. It is sufficient to say that when taken in connection with the Suter map and considered in the light of established physical facts and other evidence, the testimony of these witnesses clearly establishes the line reported by the commissioners. The exceptions are without merit and are overruled. The report of the commissioners is confirmed.

Plaintiff paid the cost of printing the report and testimony, and moves that such cost be borne by defendant.

The reasons stated by plaintiff are that defendant alone was dissatisfied with the report and, as a condition to excepting thereto, required plaintiff to pay for such printing, and that the exceptions are frivolous. We are of the opinion that the printing of the evidence was not necessary, and require defendant to bear the cost of that part of the printing. All other expenses, including the commissioners' compensation, will be divided equally between the parties.

The decree will be in accordance with this opinion. At any time within forty days the parties may submit suggestions as to form.