## HOGUE v. STRICKER LAND & TIMBER CO. et al.

District Court, S. D. Mississippi, W. D.

March 31, 1933.

Kennedy & Geisenberger, of Natchez, Miss., for W. B. Hogue.

Engle & Laub, of Natchez, Miss., for defendant and cross-complainant Mrs. Angeline E. Hogue.

Jones & Stockett, of Woodville, Miss., for defendant Stricker Land & Timber Co.

HOLMES, District Judge.

W. B. Hogue, a citizen of Mississippi, filed this suit in the chancery court of Adams county, in said state, against R. M. Stricker and Mrs. Angeline E. Hogue, citizens of Mississippi, and Stricker Land & Timber Company, Incorporated, a Louisiana corporation, and Sam Beck, citizens of Louisiana. He claims to be the owner of two large plantations in Adams county, known as "Palmetto" and "Briars," fronting on the Mississippi river, and, by reason of his riparian rights and those of his predecessors in title, to have acquired a valuable area by accretions to the mainland. Formerly there was an island in the Mississippi river on the Louisiana side, known as "Glasscock Island," which is now connected with the Mississippi shore, and the accretions to this island are also in dispute. The prayer of the bill is to remove clouds from the title, fix boundaries, appoint a receiver, issue injunctions, and grant general relief.

R. M. Stricker is the president, and Sam Beck merely an employee, of the corporate defendant. Each has filed a disclaimer, and it is clear that neither is personally interested in the controversy, or was properly served with process as a representative of the corporation. Mrs. Hogue, the only defendant except Stricker who is a citizen of Mississippi, is the wife of the plaintiff, and, if there is any real controversy between her and her husband, it is separable from that between the plaintiff and the Stricker Land & Timber Company. Mrs. Hogue has filed a counterclaim against the Stricker Land & Timber Company for accretions to the island, which she claims are in Louisiana. This is another wholly distinct and separable controversy between citizens of different states.

The Louisiana corporate defendant duly filed its petition to remove the suit to this court, asserting fraudulent joinders of resident defendants, as well as separable controversies. The cause being removed, a motion to quash the process against it was filed and then withdrawn by the Stricker Land & Timber Company, but jurisdictional objections were reserved in its answer. There was no denial by the plaintiff of the allegations of fact in the petition to remove, and no motion to remand the cause to the state court was made by him. Neither was the court requested by any of the parties to transfer the cause, or any separable part of it, to the law docket. If the bill is multifarious, or if there is a misjoinder of parties, that fact has been waived by the defendants, as no such objection has been made by any of them in the pleadings. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514.

By failing to traverse the allegations of fact in the petition to remove, the plaintiff is deemed to have assented to their truthfulness. Wilson v. Republic Iron Co., 257 U. S. 92, 42 S. Ct. 35, 66 L. Ed. 144. From these allegations it appears that the defendants do not claim the several tracts of land in dispute through a common source of title, but that their interests are wholly separate and distinct, that the controversy between the plaintiff and petitioner is separable from that of each and all of the other defendants, and that the plaintiff, having no real controversy with any of the other parties, knowingly joined them as ostensible defendants in the state court for the sole purpose of preventing a removal of the cause to this court by the petitioner. Removal was also predicated upon a federal question, but I find no basis for this contention. I think the case was properly removed because of the controversy between the plaintiff and petitioner, which is wholly between citizens of different states, and which can be fully determined as between them. Removal on this ground is sufficient to bring the whole case to this court, where all questions of misjoinder or multifariousness may be considered and determined. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514.

The real defense of the Stricker Land & Timber Company, both to the claim of Mr. Hogue and the counterclaim of Mrs. Hogue, is that the land claimed by it is wholly within the state of Louisiana, and that the corporation was not doing business in Mississippi or subject to the process of its courts. This court has the power to determine wheth-

er such is true, and, in doing so, must determine what territory in the disputed area is within and what is beyond the limits of its own jurisdiction. In doing this, it is necessary to fix the boundary between the two states where it divides the land described in the bill and in the counterclaim. The determination of this boundary, it is thought, will eliminate the necessity of considering other questions.

The Babbitt map introduced in evidence as Exhibit No. 1, will give a general illustration of the current ceased to flow therein; the land between is marked "Green," and is an undisputed accretion to Palmetto Plantation; the land marked "Yellow" is the additional accretion between said easterly chute and the present east bank of the Mississippi river. This is the land claimed by the non-resident defendant, Stricker Land & Timber Company. It is also claimed by the plaintiff as an accretion to Palmetto. The portion colored red, lying immediately west of Glasscock Island, shows the westerly bypath of the

tion of Glasscock Island, the shifting of the main channel of the river from the east to the west side, the general movement of the river to the westward, the formation of accretions on the Mississippi mainland, and the reappearance on the eastern shore of land which had formerly been on the western side of the river. The black line to the east of the plat indicates the easterly bank of the former easterly bypath of the Mississippi river; the line marked "Thread of the eastern chute" indicates the old channel of the river

Mississippi river in 1828. The portion colored blue shows the present channel of the river. The portion colored yellow was gradually eaten away and dissolved by the Mississippi river moving westward, and as it continued to move westward these portions reappeared. This map was introduced by the plaintiff. It is thought not to be absolutely accurate, but will serve to illustrate in a general way the position of Glasscock Island, with the main channel of the river to the east thereof; the shifting of the chan-

nel to the west of the island; the gradual movement of the river westwardly; the filling up of the old bed west of the island; the present channel of the river; and the general location of the lands in controversy.

The court finds from the evidence that the main channel of the river formerly ran east of the island. This island was never wholly destroyed by erosion; so, when the river changed its main channel to the west of it, the island remained in the state of Louisiana, and the boundary between the two states did not shift, but remained in the center of the old channel, as it was when the water ceased to flow continuously therein.

The bill of W. B. Hogue and the so-called counterclaim of Mrs. Hogue against the Stricker Land & Timber Company will be dismissed for want of jurisdiction of the subject-matter and of the parties, the lands being located in Louisiana, and there having been no valid service of process on the nonresident defendant, it not being, and never having been, engaged in business within the state of Mississippi. This is true because the Mississippi is the boundary river between the two states, and, where the main channel of navigation in a boundary river changes from one side of an island to the other, sovereignty over the island does not shift from one state to the other, but the rule as to the boundary line is the same as is applicable in the case of an avulsion. Missouri v. Kentucky, 11 Wall. 395, 20 L. Ed. 116; Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329; Arkansas v. Tennessee, 246 U. S. 158, 38 S. Ct. 301, 62 L. Ed. 638, L. R. A. 1918D, 258; Arkansas v. Tennessee, 269 U. S. 152, 46 S. Ct. 31, 70 L. Ed. 208.

The controversy between the plaintiff and Mrs. Angeline E. Hogue is governed by the same general principles. The latter owns Glasscock Island with certain accretions thereto, but no part of the same is within the state of Mississippi, because, regardless of when the main channel of the river shifted from the east to the west side, a portion only of the island was gradually destroyed by erosion, which caused the Mississippi shore to be extended westwardly by accretion. Such made lands or accretions belong to the plaintiff, the riparian owner of Briars Plantation in Mississippi. While the changes were in operation, the boundary between the riparian owners, as well as between the two states, was imperceptibly moving westwardly, but, when the current in the old channel of navigation ceased to flow continuously therein, the process stopped, and the bound-

ary between the parties and the states became stationary. It is the center or thread of this old channel which the evidence shows can be easily traced, and which is designated on the above-mentioned map, in white, as the "Thread of the eastern chute." Iowa v. Illinois, 147 U. S. 1, 13 S. Ct. 239, 37 L. Ed. 55; Louisiana v. Mississippi, 282 U. S. 458, 51 S. Ct. 197, 75 L. Ed. 459.

A decree may be entered accordingly.