# CASES

## ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI.

OCTOBER AND APRIL TERMS, 1871-2.

---

NEW ORLEANS, MOBILE & CHATTANOOGA RAILROAD CO. *v.*
EMILIE FREDERIO et al.

1. RAILROAD CHARTER OF N. O., M. & C. R. R. CO.—CONDEMNATION OF
LAND — NOTICE TO PARTIES IN INTEREST. — Under the charter of the N. O., M.
& C. R. R. Co., notice to all the parties in interest, of the application for the
appointment of commissioners; time and place of the meeting of the commis-
sioners, and of the hearing of their report for confirmation, is a prerequisite,
without which the proceeding is void.

2. SAME — SAME — CHANCERY — INJUNCTION. — Where land belonged to heirs,
and the widow is entitled to dower, and the widow and heirs occupied it, and
the N. O., M. & C. R. R. Co. proceeded to have the ground condemned for the
right of way and for depot purposes, but gave notice of the time and place of
application for the appointment of commissioners to appraise the value of said
property, to the widow only, and not to the heirs, and the railroad company
notified the widow that she was a tenant at will to them, and must remove
from her home or be turned out of possession. It was held, upon a bill filed by
the widow and heirs to restrain the further proceeding of the company, that an
injunction was properly issued.

APPEAL from the chancery court of Jackson county.
HENDERSON, Chancellor.

The facts of this case are stated in the opinion of the
court.

*W. P. Harris*, for appellant.

It will be found difficult to assign the bill in this cause to any ground of equity jurisdiction. The complainants are in possession under a purely legal title. The railroad company claim, under an award, which, though made in a proceeding in its nature judicial, cannot be enforced by process. There is no writ of possession possible. The right of entry exists, but it exists, as does that right, in every one having the legal title. If the proceeding was void, it is as susceptible of successful assailment in a court of law as it would be in a court of equity. The company must proceed by action of ejectment, or by writ of forcible entry and detainer, if the complainants see fit to retain possession, and the titles by which the respective parties claim, if titles at all, are purely legal.

It seems that we make no progress in jurisprudence, if at this day it be doubtful whether a party in possession, under a superior legal title, can come into a court of equity to enjoin a party who threatens to turn him out, not by legal process on a judgment rendered, but by suit or by private force. A party menaced by a legal title and having only an equitable title, not available at law against the legal title, may avert suit by applying to a court of equity, but, if he is in possession under a legal title, it would be usurpation in a court of equity to interpose. Shall we supersede the remedy by ejectment and forcible entry and detainer, and the trial by jury, by drawing into a court of chancery controversies about purely legal rights as to lands. There is no attempt in the bill to give any reasons why legal remedies, accessible to the party, are not adequate. The injury threatened is amotion from possession, a threat involved in every action of ejectment. No one will contend that the proceeding to assess the value of the property gives the company power to put the party out of possession by force. In the language of the act, "if proper notice has been given to the parties interested, and the appraisement shall be finally confirmed, the proceeding is evidence of

title'' only, and has no greater force than a deed of conveyance.

The case of Peunice v. Wallace, 37 Miss. 172, shows an abandonment of the old levee, which protected the complainant's property, and he contemplated the erection of a new one upon his land, by which his warehouse, etc., would be exposed, by being left between the abandoned levee and the new one, besides it was preferred to use his earth and timber, etc.   Spooner v. McConnell, 1 McLean, 176, 357.

This is not a bill filed to remove a cloud from the title.   It does not ask to have the proceedings of the commissioners of appraisement set aside.   There is no allegation that the confirmation is a cloud which affects the title.   Indeed, the bill states that the proceedings on their face show that no notice was given.   Besides, the sort of title which the company acquires is one which they cannot transfer.   The right of way is not transferable, and the ultimate fee remains in the grantors, where compulsory proceedings are resorted to. 1 Redf. on Railways, 247, 248, 249.

This is not a case in which there is an attempt to create an invalid title as by a sale under a void judgment, which a court of equity might, perhaps, prevent, as it tends to cloud the title, but the title, such as it is, has been created, and the party threatens to enter under it.   Against this entry the party in possession is fully armed.

The statutory proceedings to remove clouds from a title must indicate that such is the purpose of the bill and such the relief prayed.   The relief is limited solely to the cancellation of the deed or evidence of title.

It is very evident that this bill is not based on the statute, and equally evident that the statute does not refer to judgments or judicial proceedings.   It had reference to ordinary private instruments or muniments of titles.

The bill sets up in fact that the property is a homestead and that a claim of dower exists, etc.

A homestead is no more exempt from appropriation to public use than it is from taxes.  The same may be said of

dower. There is no exception in the charter of property on which there may be a dwelling-house. The law supposes that where there is exceptional value there will be adequate compensation. 29 Miss. 21.

The point as to riparian rights is not very intelligible, but if the land fronting on the river had any peculiar value on account of rights attached to it, it is to be presumed that these rights entered into the estimate of compensation. Beaty v. Brown, 34 Miss. 237.

There is no exception to the exercise of the power to take private property for public use. The power does not depend on the kind of property and the state is the judge of the necessity. The only restriction is that compensation shall be made.

Undoubtedly the right to fix the track and the site for stations belongs to the company. The court of chancery undertaking to direct the company to change a depot site would be the "added pound" on the jurisdictional point.

The bill admits the right to take land for a depot. It does not complain that ample compensation has not been tendered. The life tenant had notice, and made no objection from the inception to the close. The life estate is certainly bound, and that embraces the dwelling which the widow is defending. There is no allegations of waste affecting the ultimate fee. Indeed, the erection of costly structures on the land could hardly injure those who were not bound by the award.

The spirit of this bill is to get a station eight hundred feet back so as to leave the riparian proprietor the profit from wharves which the close proximity to a station would render profitable. This is manifest by the absurd prayer that the chancery court should compel compensation and award damages for the track which they are willing to concede.

There is no prayer in the bill to have the award of commissioners set aside. This is a fatal defect. The bill should seek a new appraisement and ask a new decree similar to that in a proceeding for a new trial. To grant this relief,

however, it is obvious, would be against the wish of the complainants. They do not want a new appraisement. They want the decree to stand and a perpetual injunction to its execution. The object is to prevent the condemnation of the land, and several reasons are set forth to show that it should not be condemned.

It is a homestead, it is a family dwelling. There are riparian rights; there is a better location elsewhere. The homestead exemption is a thing known only as between the owner and his creditors, it is not exempt from the right of eminent domain. The other suggestions are futile.

*W. & J. R. Yerger*, for appellees.

It is objected in this case that the complainants in the court below had ample remedy at law. This is a simple mistake. They had no remedy at all at law. They were the owners and tenants in possession of the land, and the railroad pretended to have obtained, by condemnation, a right to appropriate a part of the land to their use. The bill alleges that the whole proceedings were void for want of notice to the parties in interest. It is true, that, if complainants were to wait until the road sued them at law, they could defend in that suit upon the ground that the order of condemnation was a nullity for want of notice. But that power of defense does not meet the exigencies of this case. The road may or may not sue. When it will sue, where it will sue, or what action it will take to enforce its pretended claim, are matters which it determines for itself, and over which the complainant has no control. In the mean time there is a claim of title asserted by the road under a void judgment. This is a cloud upon the title of complainants which impairs the value of their inheritance, and their only remedy is by proceeding in chancery to enjoin the road from asserting title under this judgment and having the order of condemnation declared void and the cloud removed. They can bring no suit at law, and are not compelled to wait until the road may see fit to sue. They have a right to

select their own forum and are not compelled to give the selection of the forum to the road. The great beauty of the chancery system is its preventive remedies, which gives a party by anticipation redress for threatened or anticipated wrong. The remedy by injunction and for the cancelment of void judgments, bills, notes, etc., is one of the most usual and common remedies of a court of chancery, and is particularly appropriate where there is a void judgment or order which acts as a cloud upon the inheritance, and which the party claiming under it threatens to use to the detriment of the true owner. Nor is the owner bound to wait until the other party selects his place of attack and his time. He has a right to anticipate the attack and to select his own forum. Story's Eq., §§ 692, 694, 698, 700, 701, *et seq.;* ib. § 826, *et seq.*

We have examined this question very fully in the case of O'Neal v. Christian, argued and submitted some time since from Lowndes county, and ask the court to examine that brief before deciding this case.

It is objected that this bill is not a bill to remove clouds. This is a mistake. The facts show the grounds of equitable relief, and, under the prayer for injuction and general relief, this court will give whatever relief the party shows himself entitled to, not inconsistent with the particular relief asked.

TARBELL, J.:

Emilie Frederic, widow of Lewis A. Frederic, deceased, and the children and heirs of said deceased, in 1870 filed their bill in the chancery court of Jackson county, against the New Orleans, Mobile & Chattanooga Railroad Company, an incorporated company under the laws of the states of Alabama and Mississippi, to restrain said company from proceeding, under their charter, to acquire the lands of the complainants for the use of the company. The bill states that the decedent, in his life-time, was the owner of a tract of land on the east bank of the Pascagoula river, having a front on said river of two hundred and thirty-eight feet,

and extending back about sixty-eight chains, which he acquired by purchase and deeds in 1829 and 1832. The deceased entered into the possession of said land, and died seized and possessed of the same, in the year 18—. Upon the death of deceased, the title to said premises vested in complainants, and has been ever since occupied by them as their family residence, and is their homestead. Complainants aver that the railroad company, for the purpose of constructing a railroad from New Orleans to Mobile, have located said road, and have proceeded to acquire the right of way for the same, by purchase and otherwise, under the charter of said company, one hundred feet wide, through the land of complainants above described, which line and location strikes said land on the east bank of the Pascagoula river, on the northern portion of said land, and the said one hundred feet right of way will not touch the buildings on said land, which are situated on the southern portion of said tract, near the river.

Complainants do not object to the location of said road, nor to the right of way through said land, one hundred feet wide, and they state that the Pascagoula is a navigable stream, and that the front of complainants' property is a high bank upon said river, with deep water close to the shore; and they, as owners of said land, have riparian rights upon the shore and river which are of great value to them, and of which they have the right of use and enjoyment.

It is conceded that the railroad company have the right, by their charter, to acquire lands for depots, stations and turnouts, but under this power it is charged that the company have proceeded to appropriate the whole of the river front to said property, from the shore easterly about one thousand feet, and have also acquired other property on the north of said line six hundred and fifty feet wide, under the pretense that the same is necessary for a depot or station; and under this pretense are ascertaining their right and power, under their charter, to acquire property upon the

bank of the river, and the riparian rights which the ownership of such land will give them. It is alleged that the front portion of the said property is neither necessary nor suitable for depot purposes. Complainants deny the power and right of said company to acquire the banks of the river, and to appropriate the riparian rights of the complainants upon the river, to any greater extent than is necessary for the right of way one hundred feet wide ; and they aver that the shores of said river are not necessary to said company for a depot, and under the charter there is no right to acquire the same by "expropriation." Yet the company have proceeded to have the same condemned to their use. And it is further charged, "that said company cannot be the sole judges of what is necessary, and under that pretended right to acquire riparian rights upon the bank of said river, which, it is true, may be valuable to them and enable said company to establish public or private wharves upon the said river for the accommodation of commerce and said company, which," it is averred, "said company have no power or authority to do under their charter;" that the said Emilie, one of the complainants, has been notified that she is a tenant at will to the railroad company, and must remove from her home, or be turned out of possession ; that notice of the time and place of application for the appointment of commissioners to appraise the value of said property, was served only upon said Emilie, and not upon the other complainants ; that the said Emelie had no interest in said lands, except her right of dower, which had never been set off to her ; and that the proceedings are void and the company obtained no right to said land. An injunction is prayed for to restrain defendants, except as to right of way one hundred feet wide. There is also a general prayer for relief.

Among the interrogatories propounded in the bill to which answers are demanded of the company, is this, viz. : "Whether the said lands of" the complainants, "imme-

diately on the banks of the Pascagoula river are necessary for said company for depot or station purposes."

The company demurred to the bill, stating numerous causes therefor, the more important excepting to the bill, because it alleges the property in suit to be a homestead; because the *gravamen* of the bill is the right to the land on the bank of East Pascagoula river, a navigable stream, between high and low-water mark, which belongs to the public and not to complainants; because the bill shows ample remedy at law; and other causes involving a construction of the act of the legislature incorporating the railroad company. The demurrer was overruled, and the defendants appealed, assigning for error the decree overruling the demurrer. In view of the facts admitted by the demurrer, that all the owners of the land in controversy were not served with notice of the proceedings of the railroad company to appraise the same, with a view to its condemnation and appropriation by the company as required by the charter, we have concluded to remand this case in order to have it heard on its merits. There are several questions of grave importance involved, which we can better determine upon a full understanding of all the facts, should the case come again to this court. We recognize the riparian rights claimed by the complainant, and the assertion of the bill in connection therewith, that the railroad company are experimenting upon their power under the charter to obtain rights not conferred and not necessary, and more lands than are required for depot purposes, as involving questions of merit upon which we now express no opinion, further than that they are important. One of the adjudications referred to by counsel for appellants, as bearing upon the case at bar, is that of Morgan & Harrison v. Reading, 5 Smedes & Marsh. 366, in which Ch. J. Sharkey delivered one of his able and learned opinions, sustaining the right of the owner of the land on the bank of the river to the thread of the stream, subject only to a right of passage thereon as a highway when the stream admits it. We are also referred to the

case of the Commissioners of Homochitto river v. Withers, 29 Miss., upon a kindred topic, the power of the state over its navigable waters, wherein the doctrine is maintained that the legislature has general power to pass laws providing for measures of interval improvement of the public rivers and other highways within the limits of the state, subject only to the limitations and restrictions of the constitution, one of these restrictions being, that private property shall not be taken or applied to the public use, without just compensation. The cases of Morgan & Harrison v. Reading, and Commissioners of Homochitto river v. Withers, and the questions discussed, are very fully reviewed, in the Steamboat Magnolia v. Marshall, 39 Miss. 109.

From these adjudications, the rights of the complainants upon the bank of the stream and to the land under water, with their incidents, are easily deducible, as well as the power of the sovereign authority over private property. See, also, 34 Miss. 228 ; 36 ib. 300 ; 37 ib. 173 ; Bouv. Law Dic., title Riparian Rights, and cases there cited.

Curran v. Shattuck, 24 Cal. 427, was an action to enjoin the defendant from proceeding as an overseer of roads to open a highway over the lands of plaintiff. The latter denied that he had any notice of the proceedings of the road commissioners, which, being admitted, the court sustained the injunction, saying : " It cannot with propriety be urged, that the injunction in this case will prevent the laying out of a road at any future time over the lands of the plaintiff; for, notwithstanding the proceedings that have been had before the board, whether the proper steps are taken to acquire the right of way, and that right has been secured, the road may be opened, and the present injunction will not be operative against the exercise of the rights thus acquired."

In the case at bar, as in the one last quoted, notice to the parties interested is a prerequisite, without which the proceeding is void. The company, invested with the extraordinary power to appropriate private property, a power which

can be exercised only by the sovereign authority for the public use, seek to take in the summary mode pointed out in the charter, the lands of the complainants. If unable to acquire title by purchase, application may be made to certain courts, or judges, in vacation, for the appointment of commissioners to determine the compensation to be made to the owners, notice of which application must be given to all the parties in interest. Sec. 4, acts of 1867, p. 332. Notice of the time and place of meeting of the commissioners must be given (sec. 6), and also of the hearing of their report for confirmation. Sec. 7.

Notifying, according to the bill, admitted by the demurrer, only one of the joint owners of the land involved, and thereupon proceeding to the appraisement and confirmation of the report, the company, by notice, claims the occupants to be tenants at will thereto. In restraining the further proceeding of the company, in such a case, the writ of injunction is performing its most gracious mission. 2 Story's Eq. Jur., §§ 694, 698, 700, 701, 730, 861–872 ; Petit v. Shepherd, 5 Paige, 493 ; Burt v. Cassedy, 12 Ala. 734 ; Eden on Injunctions, ch. 1 ; 1 Madd. Ch. Pr. ; 1 Ves. Jr. 284 ; 5 ib. 293, 618 ; 7 ib. 413 ; 1 Bro. Ch. 124 ; 3 ib. 15, note 1 ; 2 Swans. 159, note ; 2 Pet. 95.

All statutory modes of divesting titles must be strictly followed. He who relies for a title upon an extraordinary mode of acquisition given him, not by the will of the owner, expressed or implied, but against his will and by the mandate of the law, must show for his warrant a strict compliance with those statutory rules from which his title accrues. The power confirmed must be executed precisely as it is given, and any departure will vitiate the whole proceeding. Busby v. Mountain Lake Water Co., 13 Cal. 306 ; Sedgwick on Stat. and Const. Law, 319 ; Cruger v. Hudson River R. Co., 12 N. Y. 190, and several cases in this state.

It is no answer to the injunction to say there is ample remedy at law. The complainants are menaced in their title and possession by a *quasi* legal proceeding, and by a

corporation representing the collective power, influence and wealth of many. When, where, in what court, or in what mode the company will attempt to enforce the title, which, by its notice, it claims to have acquired, are among the uncertainties to which the complainants are subjected. Unrestrained by injunction, we may presume the company would succeed in obtaining possession of these lands, and thus dispossess the owners, without divesting them of title. Once out of possession, the complainants could appeal in vain to the ordinary process of law, with its delays, costs, expenses and annoyances, for that redress to which they would be entitled. As an abstract proposition, independent of all other considerations, it would be an act of injustice to deny to the complainants the writ of injunction to protect them in their possession, pending the proceedings to deprive them of their property. In its remedial character, in the prevention of injustice and oppression, we conceive this writ to have been appropriately employed in the case at bar, as presented by the record before us.

Regarding railroads as public improvements, and their builders as public benefactors, nevertheless, holding an even balance of the scales of justice between them and the humblest citizen, the latter as well as the former must be protected in their legal rights. That the construction of the railroad is a great public enterprise cannot be invoked in justification of the violation of private rights, though it may be conceded, that in such cases an injunction is not a matter of absolute right, but depends upon a consideration of all the equities of the case. Bruce v. The Del. & Hudson Canal Co., 19 Barb. 371; Ely v. City of Rochester, 26 ib. 133; Creanor v. Nelson, 23 Cal. 464.

The justice of the injunction, upon the case presented, seems to be sustained by reason, the adjudications, and the constitutional guaranty that no person shall be deprived of his property, except by due process of law.

The decree overruling the demurrer is affirmed, with leave to defendant to answer within forty days from this date.