## STATE OF ARKANSAS *v.* STATE OF TENNESSEE.

### INTERLOCUTORY DECREE. IN EQUITY.

No. 4. Orignal. Entered June 10, 1918.

Defining the principles determining the boundary between Arkansas and Tennessee in accordance with the previous opinion and decision, 246 U. S. 158, and appointing a commission, duly empowered, to locate and designate the line, with instructions to report, etc.

THIS cause came on to be heard at this Term and was argued by counsel; and thereupon and on consideration thereof, it was Ordered, Adjudged and Decreed as follows, viz:

1. The true boundary line between the States of Arkansas and Tennessee, aside from the question of the avulsion of 1876, hereinafter mentioned, is the middle of the main channel of navigation of the Mississippi river as it existed at the Treaty of Peace concluded between the United States and Great Britain in 1783, subject to such changes as have occurred since that time through natural and gradual processes.

2. By the avulsion of March 7, 1876, which resulted in the formation of a new channel known as the Centennial Cut-off, the boundary line between said States was unaffected, and remained in the middle of the former main channel of navigation as above defined.

3. The boundary line between the said States should now be located along that portion of the bed of said river that was left dry as the result of said avulsion, according to the middle of the main navigable channel as it existed at the time the current ceased to flow therein as the result of said avulsion.

4. A commission consisting of C. B. Bailey, of Wynne,

Arkansas, Horace Vandeventer, of Knoxville, Tennessee, and Charles A. Barton, of Memphis, Tennessee, competent persons, is here and now named by the court, upon the suggestion of counsel, to run, locate, and designate the boundary line between said States along that portion of the bed of said river that was left dry as the result of said avulsion, in accordance with the above principles: Commencing at the upper end of the abandoned portion of the river bed at or about the beginning or head of said Centennial Cut-off, and thence following along the middle of the former main channel of navigation by its several courses and windings to the lower end of the abandoned portion of said river bed at or about the terminus or outlet of said Centennial Cut-off.

5. In the event the said Commission cannot now locate with reasonable certainty the line of the river as it then ran, that is, at or immediately before the avulsion of 1876, it shall report the nature and extent of the erosions and accretions that occurred in the old channel prior to its abandonment by the current as the result of said avulsion, and in said report, if necessary to be made in obedience to this paragraph of the decree, said Commission shall give its findings of fact and the evidence on which the same are based.

6. Before entering upon the discharge of their duties, each of said commissioners shall be duly sworn to perform faithfully, impartially, and without prejudice or bias the duties herein imposed; said oaths to be taken before the Clerk of this court, or before the Clerk of any District Court of the United States, or before an officer authorized by law to administer an oath in the State of Arkansas or of Tennessee, and returned with their report; that said Commission is authorized and empowered to make examination of the territory in question, and to adopt all ordinary and legitimate methods in the ascertainment of the true location of said boundary line; to summon

witnesses and take evidence under oath; to compel the attendance of witnesses and require them to testify; to call for and require the production of papers and other documentary evidence; such evidence, however, to be taken upon notice to the parties, with permission to attend by counsel and cross-examine the witnesses; and all evidence taken and all exceptions thereto and rulings thereon shall be preserved and certified and returned with the report of said commissioners; and said commissioners are also at liberty to refer to and consult the printed record in the cause and the opinion of this court delivered on March 4, 1918, and to do all other matters necessary to enable them to discharge their duties and attain the end to be accomplished conformably to this decree.

7. It is further ordered that should any vacancy or vacancies occur in said board of commissioners by reason of death, refusal to act, or inability to perform the duties required by this decree, the Chief Justice of this court is hereby authorized and empowered to appoint another commissioner or commissioners to supply such vacancy or vacancies, the Chief Justice acting upon such information in the premises as may be satisfactory to him.

8. It is further ordered that said commissioners do proceed with all convenient dispatch to discharge their duties conformably to this decree, and they are authorized, if they deem it necessary, to request the coöperation and assistance of the state authorities of Arkansas and Tennessee, or either of those States, in the performance of the duties hereby imposed.

9. It is further ordered that the Clerk of this court shall forward at once to the Governor of each of said States of Arkansas and Tennessee and to each of the commissioners hereby appointed a copy of this decree and of the opinion of this court delivered herein March 4, 1918, duly authenticated.

10. The said commissioners shall make a report of their proceedings under this decree as soon as practicable and on or before such date as hereafter shall be fixed by the court, and shall return with their report an itemized statement of services performed and expenses incurred by them in the performance of their duties.

11. All other matters are reserved until the coming in of said report.