HILL CITY COMPRESS CO. *v.* WEST KENTUCKY COAL CO. *et al.*

(Division B. June 3, 1929. Suggestion of Error Overruled June 28, 1929.)

[122 So. 747. No. 27845.]

Green, Green & Potter, of Jackson, Hirsh, Dent & Landau and T. G. Birchett, all of Vicksburg, for appellant.

Henry, Canizaro & Henry and Brunini & Hirsch, all of Vicksburg, for appellees.

Ethridge, P. J., delivered the opinion of the court.

The Hill City Compress Company, claiming to be the owner of the west bank of the canal where the appellee, the West Kentucky Coal Company, had barges moored and tied to the west bank of the said canal in front of

the city of Vicksburg, sued out an attachment in chancery against the West Kentucky Coal Company for rent for the tying up of said barges to the said west bank of the canal. The Royal Route was garnished in that proceeding, and answered admitting an indebtedness. The answer of appellees, the defendants below, denied the ownership of the Hill City Compress Company, contending that the land was not in Mississippi, but was in Louisiana, and that Mrs. Anna B. Long, afterwards made a party defendant, had been in adverse possession of the said land for more than the ten years required by statute to confer title in such cases. Mrs. Long had leased the right to the coal company to tie its barges to the west bank of the canal where the barges were located.

In 1876 the Mississippi river, by avulsion, changed its channel, and the boundaries of the Mississippi river as they existed prior to the said avulsion became a fixed boundary line between the states of Louisiana and Mississippi. The appellants claim title to the center of the river as it existed in 1876 prior to the avulsion. It is the contention of the appellant that the center of the river, within the meaning of the law defining boundaries of the state, is the center of the stream between banks and not the center according to the thread or thalweg of the stream. The chancellor found as a fact that the thalweg of the Mississippi river as it existed at the time of the avulsion lay east of the land where the barges were tied up, and that the land involved was in the state of Louisiana, and belonged to the defendants in the suit, and dismissed the bill.

There was ample evidence to show that the thalweg of the stream lay east of the land (over which the barges floated, and to which the barges were tied), at the time of the avulsion of 1876. There was a conflict as to this, perhaps, but we think there was ample evidence to show

that the deep channel of the river, as it existed in 1876, and prior thereto, lay east of the point where the barges were tied, and consequently the chancellor had facts upon which to base his decision. There was also a contention by the defendants that, regardless of where the land lay with reference to the said boundaries, they and their predecessors had been in open, adverse, and hostile possession of the land for more than the statutory period, and there is a conflict of evidence with reference to this proposition. The ownership of the complainant on the east bank of the old Mississippi river, now the Yazoo Canal, originally extended to the thalweg of the river; in other words, the plaintiff's land extended to the center or thread of the stream, or whatever point was the boundary between the state of Louisiana and the state of Mississippi at the time of the avulsion of 1876. It is argued by the appellant that the decisions of this court have established the proposition that the center of the stream in such cases is the line middleway between the banks of the stream. We think the decisions of the United States supreme court is final authority upon this proposition, that court having original jurisdiction to settle disputed boundaries between the states, and whatever rule the state may have adopted is not final authority upon the question of boundaries, but would be subject to the control of the decisions of the United States supreme court upon such questions. That court has had occasion to deal with the subject in a number of cases, and in the case of Iowa v. Illinois, 147 U. S. 1, 13 S. Ct. 239, 37 L. Ed. 55, fully considered and elaborately discussed the question, and reached the conclusion that the true boundary is the middle of the main channel of navigation of the Mississippi river, where that river constitutes the boundary line. In that case, after discussing the law of nations and quoting from authorities, the court, at page 243 of 13 S. Ct. (147 U. S. 10) said:

"The reason and necessity of the rule of international law as to the mid-channel being the true boundary line of a navigable river separating independent states may not be as cogent in this country, where neighboring states are under the same general government, as in Europe, yet the same rule will be held to obtain unless changed by statute or usage of so great a length of time as to have acquired the force of law.

"As we have stated, in international law and by the usage of European nations, the terms 'middle of the stream' and 'mid-channel' of a navigable river are synonymous and interchangeably used. The enabling act of April 18, 1818, (3 St. chapter 67, p. 428,) under which Illinois adopted a constitution and became a state and was admitted into the Union, made the middle of the Mississippi river the western boundary of the state. The enabling act of March 6, 1820, (3 St. chapter 22, section 2, p. 545,) under which Missouri became a state and was admitted into the Union, made the middle of the main channel of the Mississippi river the eastern boundary, so far as its boundary was coterminous with the western boundary of Illinois. The enabling act of August 6, 1846, (9 St., p. 56,) under which Wisconsin adopted a constitution and became a state and was admitted into the Union, gives the western boundary of that state, after reaching the river St. Croix, as follows: 'Thence down the main channel of said river to the Mississippi, thence down the center of the main channel of that (Mississippi) river to the northwest corner of the state of Illinois.' The northwest corner of the state of Illinois must therefore be in the middle of the main channel of the river which forms a portion of its western boundary. It is very evident that these terms, 'middle of the Mississippi river,' and 'middle of the main channel of the Mississippi river,' and 'the center of the main channel of that river,' as thus used, are synony-

mous. It is not at all likely that the congress of the United States intended that those terms, as applied to the Mississippi river separating Illinois and Iowa, should have a different meaning when applied to the Mississippi river separating Illinois from Missouri, or a different meaning when used as descriptive of a portion of the western boundary of Wisconsin. They were evidently used as signifying the same thing.

"The question involved in this case has been elaborately considered, both by the supreme court of Iowa and the supreme court of Illinois, in cases relating to the assessment and taxation of bridges crossing the Mississippi river, as to the point to which the jurisdiction of each state for taxation extends, and they differed in their conclusions. In Dunlieth & D. B. Co. v. County of Dubuque, 55 Iowa, 558, 564, 8 N. W. 443, the supreme court of Iowa, after observing that the act of congress admitting Iowa into the Union, and the constitution of Iowa in its preamble, declare that the eastern boundary of the state shall be 'the middle of the main channel of Mississippi river,' proceeds to inquire what line is understood by those words, 'middle of the main channel.' The defendant maintained that the deep water of the stream used in the navigation of the river was meant, while the plaintiff insisted that the words described the bed in which the stream of the river flows; that is, the bed over which the water flows from bank to bank. The court thought that the words, when applied to rivers generally, without the purpose of describing their currents or navigable characters, always bore the latter signification, observing that this was their primary meaning, and was of opinion that they were used in that sense in the act of congress admitting the state into the Union, and in the constitution of Iowa. In support of this view the court referred to the changing character of the currents of the river followed by vessels,

caused by the shifting nature of the sand bars found in the river. 'The course of navigation,' it said, 'which follows what boatmen call the "channel," is extremely sinuous, and often changing, and is unknown except to experienced navigators. On the other hand, the bed of the main river, designated by the word "channel," used in its primary sense, is the great body of water flowing down the stream. It is broad, and well defined by islands or the main shore. It cannot be possible that congress and the people of the state, in describing its boundary, used the word "channel" to describe the sinuous, obscure, and changing line of navigation, rather than the broad and distinctly defined bed of the main river. The center of this river-bed channel may be readily determined, while the center of the navigable channel often could not be known with certainty. The first is a fit boundary line of a state. The second cannot be.'

"In Buttenuth v. Bridge Co., 123 Ill. 535, 17 N. E. 439 (5 Am. St. Rep. 545), the supreme court of Illinois reached a different conclusion after an elaborate consideration of the same question. That was a case where an alleged overestimate was made of a bridge crossing the Mississippi river at St. Louis; and the question discussed was, how far did the jurisdiction of Illinois extend over the river? After observing that when a river is a boundary between states, as is the Mississippi between Illinois and Missouri, it is the main—the permanent—river which constitutes the boundary, and not that part which flows in seasons of high water and is dry at others, the court proceeds, treating the Mississippi river as a common boundary between the states of Illinois and Missouri, to inquire the meaning of the term, 'middle of the Mississippi river,' used in the enabling act of congress and in the constitution, defining the boundaries of the state of Illinois. It answers the inquiry by observing that the word 'channel' is used as

indicating 'the space within which ships can and usually do pass,' and says: 'It is apprehended it is in this sense the expressions "middle of the river," "middle of the main channel," "mid-channel," "middle thread of the channel," are used in enabling acts of congress and in state constitutions establishing state boundaries. It is the free navigation of the river—when such river constitutes a common boundary, that part on which boats can and do pass, sometimes called "nature's pathway"—that states demand shall be secured to them. When a river, navigable in fact, is taken or agreed upon as the boundary between two nations or states, the utility of the main channel, or, what is the same thing, the navigable part of the river, is too great to admit a supposition that either state intended to surrender to the state or nation occupying the opposite shore the whole of the principal channel or highway for vessels, and thus debar its own vessels the right of passing to and fro for purposes of defense or commerce. That would be to surrender all, or at least the most valuable part, of such river boundary, for the purposes of commerce or other purposes deemed of great value, to independent states or nations.'

"The opinions in both of these cases are able, and present in the strongest terms the different views as to the line of jurisdiction between neighboring states, separated by a navigable stream; but we are of opinion that the controlling consideration in this matter is that which preserves to each state equality in the right of navigation in the river. We therefore hold, in accordance with this view, that the true line in navigable rivers between the states of the Union which separates the jurisdiction of one from the other is the middle of the main channel of the river. Thus the jurisdiction of each state extends to the thread of the stream, that is, to the 'mid-channel,' and, if there be several channels, to

the middle of the principal one, or, rather, the one usually followed.''

In subsequent cases the court has adhered to this ruling. See Arkansas v. Tennessee, 247 U. S. 461, 38 S. Ct. 557, 62 L. Ed. 1213; Arkansas v. Mississippi, 250 U. S. 39, 39 S. Ct. 422, 63 L. Ed. 832; Louisiana v. Mississippi, 202 U. S. 1, 49, 26 S. Ct. 408-571, 50 L. Ed. 913—930. We think the reasoning of the above authorities is unanswerable, and that it is necessary to follow the rule of the supreme court of the United States as shown in the case of Iowa v. Illinois. The different states may take contrary positions and may give able reasons for their views, but such conflicts are fruitful of trouble, and should be avoided. As we understand the chancellor's decision, it is predicated upon this rule, and the judgment will be affirmed.

Affirmed.