**ANDERSON–TULLY CO. v. TINGLE et al.**

**No. 12115.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 20, 1948.

Rehearing Denied March 19, 1948.

Lamar Williamson, of Monticello, Ark., and M. E. Ward, of Vicksburg, Miss., for appellant.

Landman Teller and J. D. Thames, both of Vicksburg, Miss., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The suit began in a Mississippi State court, brought by appellees, citizens of Mississippi, against appellant, a corporation of Michigan, to recover the value of timber cut from lands east of and adjacent to the

Mississippi River to which the plaintiffs claimed title. The suit was removed to the federal district court, where the defendant claimed title to the land, and alleging that the plaintiffs were clouding its title counterclaimed by praying a decree cancelling the cloud and quieting its title. The plaintiffs then asked a decree quieting their title, so that the case became one in equity. It was stipulated that plaintiffs own several identified lots of land in township 16 north, ranges 2 and 3 east, District West of Pearl River; and that defendant owns stated lots and fractional lots in townships 16 and 17, in Choctaw District, west of the Yazoo River and known as Brown's Point Place. The titles are all derived from the United States Government under a survey made in 1822, and grants of the platted lots made prior to 1830. In the survey Brown's Point was shown as a V-shaped piece of land in the fork between the Mississippi River on the west and the Yazoo River on the east and defendant's lots covered the whole of Brown's Point. Plaintiffs' lots lay east of the Yazoo River, and the more northerly lots were bounded westwardly by it; but the most southerly lots extended below the mouth of the Yazoo and were bounded westwardly by the Mississippi. By an avulsive cut-off in 1799 the Mississippi River had left its old bed, and the Yazoo River had adopted the old bed for several miles to reach a new junction point, so that the Yazoo River in 1822 was flowing east of what was then Brown's Point in a bed much larger than it needed, to join the Mississippi below Brown's Point in the latter's new bed. Since 1822 the evidence shows that much accreted land has been formed adjacent to plaintiffs' lots east of the Yazoo, and much more adjacent to appellant's Brown's Point lots between the two rivers, so that Brown's Point has extended several miles southwardly, and the mouth of the Yazoo has also moved that far southwardly. In 1903 the Yazoo Diversion Canal was completed which cut off the waters of the Yazoo upstream and delivered them into the Mississippi elsewhere. Navigation of the Yazoo afterwards went through the Canal, and in a few years the old Yazoo River bed opposite Brown's Point became choked at its mouth and gradually filled up. The land in dispute consists wholly of the accreted extension of Brown's Point southward since 1822. A mass of historical and expert opinion evidence was introduced. The defendant contended that this land is a part of their Brown's Point lots. The plaintiffs contended that so much of the land as is south of a line drawn from the middle of the mouth of the Yazoo as it was in 1822 westwardly at right angles to the main current of the Mississippi as it then was, being opposite their lots as then surveyed, is an accretion to them. The plaintiffs won a decree for the land and timber and defendant appeals.

The legal conclusions of the district court are simple and clear, and may be thus stated: (1) The law of Mississippi controls. (2) The respective parties through their predecessors acquired actual title, as riparian owners, to the bed of the Mississippi as far as the State line of Louisiana opposite their respective original lots. This boundary line was and continued to be the thread of the stream. (3) The alluvion deposited on the bed so owned by plaintiffs was the property of the plaintiffs as owners of their part of the bed though under water, and the fact that it appeared above water attached to defendant's land did not make it defendant's land. (4) The "right angle rule" should be applied in dividing the alluvial deposit south of the original Brown's Point, that is a line at right angles to the course of the Mississippi drawn from the point in the Yazoo where the Government survey showed the lots of plaintiff and defendant joined, which point the findings of fact state was fixed by the center or thalweg of the Yazoo meeting the then east bank, extended, of the Mississippi. The decree established that line as the present boundary.

■ The law stated as conclusions (1) and (2) is unquestionably correct. While controversies between States as to their boundaries are within the original jurisdiction of the Supreme Court and are to be settled by it, so that private land titles cannot ignore the boundary so established, State of Arkansas v. State of Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638,

L.R.A. 1918D, 258, there has never been any difference of view between the Supreme Court of the United States and that of Mississippi, that the thread of the stream or the thalweg is to be recognized. Hill City Compress Co. v. West Kentucky Coal Co., 155 Miss. 55, 122 So. 747. The doctrine of State of Arkansas v. State of Tennessee as to change of boundary by slow, non-avulsive changes in the thalweg is also the law of Mississippi. See cases below. There is nothing in this case to prevent the ordinary application of Mississippi law to these private owners of Mississippi land.

■ The law of Mississippi as to boundaries by freshwater streams above the ebb and flow of the tides is the common law, regardless of the size and actual navigability of the streams; and that law is that the owners of the land own to the thread of the current of the stream, assumed in the absence of other proof to be the center line of the stream; but that the boundary shifts with gradual non-avulsive changes in the stream, so that an owner may lose or gain an indefinite area thereby. The underwater private ownership is of course subject to the public right of navigation. Morgan and Harrison v. Reading, 1844, 3 Smedes & M. 366; Steamboat Magnolia v. Marshall, 39 Miss. 109; Wineman v. Withers, 143 Miss. 537, 108 So. 708; United States Gypsum Co. v. Reynolds, 196 Miss. 644, 18 So.2d 448. See also our decisions touching the Mississippi law in Cox v. Phillips, 5 Cir., 277 F. 414, and Iselin v. La Coste, 5 Cir., 139 F.2d 887.

Conclusions (3) and (4) would have been correct if the Mississippi River alone had been concerned as a boundary.* Because they overlook the Yazoo River as a changing boundary we think a wrong result was reached. In the fact finding No. 10, after saying that the western boundary of the lands of both parties was at the date of the Government survey and has remained the thalweg of the Mississippi, it is stated: "This westerly boundary of plaintiffs' riparian ownership and title on the Mississippi River was not limited, and defendant's title and riparian ownership was not enlarged or augmented, by the later intervening thalweg of the Yazoo River". This statement we think is incorrect.

■ No case has been presented, and none apparently exists in Mississippi, where the interaction of two streams as boundaries has been examined as affecting accretions in the fork between them. We think the question is answered by noting that each stream, regardless of relative size, is a boundary, and the same rules of law apply to each. The Mississippi is, according to the evidence, fifteen times larger in volume of flow than the Yazoo. But the Yazoo has a watershed of about 14,000 square miles with a rainfall of more than 55 inches per annum. Before the Yazoo Diversion Canal was dug it had a channel some fifty feet deep near its mouth and was navigable by large boats for many miles. It was certainly a flowing freshwater stream, though it had an oversize bed in 1822 at Brown's Point and its current no doubt was slackened thereby. Though by the common law standard neither the Mississippi nor the Yazoo would be a navigable stream, as explained by the early Mississippi cases above cited, they both stand alike in Mississippi as boundaries and as depositors of alluvion as was held in those cases. The law for the Mississippi was so stated not because of its size and importance, but in spite thereof. The parties here so recognize, for neither contends for a boundary line in the bed of one stream different from the other. In each the boundary originally was the center or thread of the stream.

It appears that the older cases speak of the "center of the stream" or "the thread of the current" as the boundary. The center of the stream is assumed to be the same as the thread of the current if it is not shown otherwise. In State of Iowa v. State of Illinois, 147 U.S. 1, 13 S.Ct. 239, 37 L.Ed. 55, the term "thalweg" of the

---

* Archer v. Southern Railway Co., 114 Miss. 403, 75 So. 251, and Smith v. Leavenworth, 101 Miss. 238, 57 So. 803, relied on by the district court, are not controlling, because the former related to an island and there is no island here; and because the latter did not involve the intervening river boundary which is present here.

stream was used, and the later cases in Mississippi use that term, as did the district court. The word is German for "valley-way" and means the lowest part of the river bed in the direction of its flow, or the deep channel of the river. It can be, and in making charts is, accurately located by transverse soundings. The thalweg and the thread of the stream are related as cause and effect. If the bed is hard, as rock, the thalweg will direct the thread of the stream. If the bed is sand and mud, the thread of the current will control the thalweg, shifting it by erosion as the current shifts. As boundaries the two signify the same thing, the thalweg being more accurately ascertainable. We will use that term.

■ The Mississippi and Yazoo run through alluvial soil and are constantly shifting their thalwegs. As this is done slowly by momentarily imperceptible changes, and not by sudden avulsion, the law is settled that any boundary which the thalweg marks is shifted too. So where two boundings thalwegs intersect a corner exists like that established by any two intersecting landlines, except that it is a movable corner as the thalwegs marking it move. The intersection here moved southerly and easterly because the thalweg of the Mississippi took a southeasterly course and that of the Yazoo pushed southeasterly with it. The Mississippi thalweg remained the westerly boundary of all the lands that still reached it, but it ceased to be the boundary of those as to which the thalweg of the Yazoo had moved southeasterly downstream so as to intervene between those lands and the thalweg of the Mississippi; as to them the Yazoo thalweg became there the westerly boundary.

■ This result accords both with the general law of shifts in boundaries by non-avulsive changes in streams; and also with the underwater ownership to the thread of the streams, or their thalwegs, established in Mississippi, and the consequent ownership of what is slowly deposited, though submerged. It is a fact of common knowledge, and abundantly shown by expert testimony in this case, that the erosive and carrying power of a stream depends on the velocity of the current, and that deposits are formed only because and where the velocity is checked. Since the thalweg is formed by the current where it is swiftest, a deposit will not occur in the thalweg but on one or both sides of it. Such deposit belongs to the owner of the bed on his side of the thalweg, whether or not it has emerged as dry land. But he is liable to lose it by a change in the thalweg, just as dry land is lost. By non-avulsive change a river may take a whole plantation. By such change the Yazoo at its mouth was gradually forced eastward, probably by deposits of the Mississippi just west of the thalweg of the Yazoo and therefore on defendant's land, which deposits the current of the Yazoo could not carry away, so that the Yazoo's current was deflected slightly eastward and took the Yazoo thalweg with it, to a lower point of entrance into the Mississippi. This continuous action proceeded till the artificial avulsion of the Yazoo by the Canal stopped its current, it became a dead stream along Brown's Point, and what had been its mouth became part of the bank of the Mississippi. The boundary line between the Brown's Point land and the land of plaintiffs which had been the movable thread of the Yazoo stream or thalweg then became a fixed line, terminating at its southerly end where the two thalwegs then intersected.

This matter of thalwegs and their intersections is not imaginary, any more than the thread of streams is. The Yazoo River did not at any time while flowing end with its banks. Its waters flowed on into the larger Mississippi till its current was united with the current of the Mississippi. Its thalweg, too, continued so far as there was current to make it. Currents of the past cannot be observed now, and thalwegs of the past cannot be sounded and their exact location now is difficult, but they can be approximated. The Yazoo thalweg really existed till the Yazoo lost its current.

■ It necessarily follows that all deposits and above-water accretions between the thalwegs of the two rivers at all times belonged to the owner of Brown's Point. Where a river is a boundary, and

there is no avulsion, a landowner can never cross the river to claim an accretion on the other side. Where there is one owner of all the land in the fork between two rivers which are boundaries, necessarily all accretions which form between the two rivers belong to the owner of the fork, no matter how large. They cannot belong to the lands across either river. How the accretion ought to be divided among several owners in the fork, where there are several, is not a question in this case.

 To make a lawful decree it is necessary to fix the approximate date when the Yazoo River ceased to be a flowing stream with a thalweg into the Mississippi, and to locate approximately the end of that thalweg in the bed of the Mississippi. At that date the thalweg of the Yazoo became a fixed boundary and all accretions then existing east and south of it belong to plaintiffs. All then existing accretions to the north and west of it belong to the defendant. State of Arkansas v. State of Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638, L.R.A. 1918D, 258; Hogue v. Stricker Land Co., 5 Cir., 69 F.2d 167, Id., 5 Cir., 70 F.2d 722. Subsequent accretions from the Mississippi, if any, will be governed by the usual rules of a single river boundary.

The judgment is reversed, with direction to make a decree accordingly, and to take steps, if the parties so desire, to fix the above mentioned point, if now dry land, and the course of the dead thalweg, which is now the boundary line.